[No. F041769. Fifth Dist. May 8, 2003.]

In re RICARDO L., JR., a Person Coming Under the Juvenile Court Law.
KINGS COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
RICARDO L., Defendant and Appellant.

## COUNSEL

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Denis A. Eymil, County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

Patricia M. Belter for Minor.

## OPINION

**GOMES, J.**—Appellant Ricardo L., father of Ricardo L., Jr. (Ricardo, Jr.), appeals from a dispositional order declaring his son a dependent and denying him reunification services because the court had terminated reunification services for Ricardo, Jr.'s sibling due to appellant's failure to reunify with her, and appellant had not subsequently made reasonable efforts to treat the problems that led to the sibling's removal. On appeal, appellant contends (1) there was insufficient evidence to support the juvenile court's finding that the Indian Child Welfare Act (ICWA) did not apply to Ricardo, Jr., (2) the allegations of the dependency petition fail to state a cause of action and there is no substantial evidence supporting the jurisdictional finding under Welfare and Institutions Code section 300, subdivision (j),[1] (3) the court erred in denying him reunification services, and (4) the court erred in denying him visitation. We agree that there was insufficient evidence to support the court's finding of jurisdiction under section 300, subdivision (j). Therefore, we will reverse the jurisdictional and dispositional orders.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the father of S.L. (born in September 2000), and Ricardo, Jr. (born in June 2002). S.L. and Ricardo, Jr.'s mother is Sara S. Sara is also the mother of S.L. and Ricardo, Jr.'s half siblings, C.S. and I.S.

On September 20, 2000, the Kings County Human Services Agency (the Agency) initiated juvenile dependency proceedings over S.L. pursuant to section 300, subdivision (b) (failure to protect), because appellant's illegal drug use rendered him incapable or impaired his ability to provide appropriate care and supervision to S.L., and pursuant to subdivision (j) (abuse of sibling), because in April 2000, C.S. and I.S. had been declared dependent

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

children under subdivisions (b) and (g) of section 300 as a result of Sara's drug abuse, the failure to provide appropriate mental health care for C.S., the unsafe and unsanitary condition of the home, and Sara's engaging in violent episodes in I.S.'s presence, and that S.L. was at risk of the same abuse and neglect.[2]

At the October 11, 2000, jurisdictional/dispositional hearing, the juvenile court found that S.L. came under section 300, adjudged S.L. a dependent, removed her from parental custody, and adopted the jurisdictional/dispositional report filed on October 11, 2000. By June 2002, C.S. and S.L. had been returned to Sara's custody with family maintenance services, while appellant was receiving family reunification services.

On June 17, 2002, the Agency detained Ricardo, Jr., who had been living with Sara. On June 19, 2002, the Agency filed a petition under section 300, subdivision (j) with respect to Ricardo, Jr. The allegation under subdivision (j) alleged: "The children, [C.S.], [I.S.] and [S.L.] were adjudged dependent children of the Court on 04/05/2000 and 10/11/2000, having been found to come within provisions of the Welfare and Institutions Code § (b) and (g) [sic] as a result of the parent's drug abuse, unsanitary home conditions and failure to protect from sexual abuse. The children, [C.S. and S.L.], continue to require the protection of the Juvenile Court. [Ricardo, Jr.] is the sibling/half sibling of the above mentioned minors and is at risk of the same abuse."

On June 20, 2002, the detention hearing was held on the petition. In the detention report filed that same day, the Agency's social worker stated that

---

[2]On January 21, 2003, respondent filed in this court a motion to augment the record with six documents filed with the juvenile court in the dependency proceedings of C.S. and S.L. Respondent asserted the juvenile court took judicial notice of these documents in rendering a decision in C.S.'s and S.L.'s cases, and the documents are relevant to the juvenile court's jurisdictional finding and dispositional order in Ricardo, Jr.'s case. By our January 31, 2003, order, we deferred ruling on the motion to augment pending receipt of a supplemental clerk's transcript consisting of a request for judicial notice respondent filed with the juvenile court on October 1, 2002, which we ordered the record be augmented with.

As appellant points out in his opposition to the motion to augment, these documents were not filed in Ricardo, Jr.'s case. (See Cal. Rules of Court, rule 12(a)(1)(A) ["At any time . . . the reviewing court may order the record augmented to include: [¶] (A) any document filed or lodged *in the case* in superior court . . . ," (italics added)]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085] ["Augmentation does not function to supplement the record with materials not before the trial court. [Citations.]"].) We do note, however, that the first two of these documents—the section 300 petition filed on September 20, 2000, on behalf of S.L. and the juvenile court's October 11, 2000, minute order—are ones the juvenile court did judicially notice in Ricardo, Jr.'s case when it granted respondent's October 1, 2002, request for judicial notice, which requested the court judicially notice these, as well as two other, documents. Accordingly, we grant the motion to augment with respect to exhibits 1 and 2 attached to respondent's motion to augment, but deny the motion with respect to the remaining documents, exhibits 3 through 6.

although appellant has previously denied any American Indian heritage, Ricardo, Jr.'s maternal grandmother, Elizabeth S., told the social worker on June 18, 2002, that her husband, Anthony S., "may have tribal affiliation" since "her husband was adopted and the family is unaware of which tribe he may be affiliated with." The social worker noted that the Agency had submitted written correspondence to the Bureau of Indian Affairs in the past on Sara's behalf, and had received a response that the Agency had not provided an adequate amount of tribal information, but an "SOC 318" would be submitted to the Bureau of Indian Affairs with all known information on behalf of Ricardo, Jr.

The report states that continued detention was needed because "[t]he parents have a past history of drug abuse, domestic violence and neglect, which have [sic] not been ameliorated and pose a risk to the minor, [Ricardo, Jr.]. Furthermore, [Ricardo, Jr.] is a sibling/half sibling of [S.L.] and [C.S.] who were previous [sic] removed from the care of her [sic] parents due to neglect, the parents [sic] drug use and domestic violence." The report further states "[t]he Agency has provided a significant amount of services to both parents in attempts to eliminate the risk to the child and the child's older siblings," but it does not list what services were provided.

As supporting evidence, the report stated that social worker Kristi Bourque had received a referral that appellant was seen entering Sara's home by using a key, despite a previous court order that appellant was not authorized to be in the home or around the children without an appropriate party supervising the visitation. Ms. Bourque went to the home with two police officers. Upon arrival, Ms. Bourque noted S.L., I.S., and Ricardo, Jr. were in the home with Sara. Sara denied appellant was currently in the home, but stated he was at the home earlier in the day to visit Ricardo, Jr. Sara said her mother was present during the visitation to provide supervision.

While in the home, Ms. Bourque observed men's dirty clothes in the laundry pile located in the bathroom and several cans of shaving cream and men's deodorant in the medicine cabinet. Ms. Bourque, apparently with the officers, checked the bedrooms. The first bedroom, which was C.S.'s, was locked. A key was used to open the door; no one was present in the room, but Ms. Bourque saw that the room was very dirty and difficult to navigate through due to the amount of clothes and toys piled everywhere. The next bedroom, which was Sara's, was also locked. Sara stated she used a screwdriver to disengage the lock, but it took her two or three minutes to find one. A noise was heard from inside the room and one of the officers stated that someone was inside. Sara denied anyone was in the room. Upon entering the

room, Ms. Bourque noted there were men's clothing in the closet, a pair of dirty men's pants draped on the bed, and appellant's Hollywood Video card was lying on the nightstand.

In the meantime, one of the officers had gone outside. This officer told Ms. Bourque that he saw a man jumping from Sara's bedroom window and fleeing on foot. The officers, however, were unable to locate him. The officer ran a criminal background check on appellant, which revealed he had an outstanding warrant in the amount of $10,000. The police cited Sara on the charge of harboring a fugitive.

Ms. Bourque spoke with the maternal grandmother, Elizabeth S., by telephone, and she denied having supervised any visitation earlier that day. Sara then told Ms. Bourque that appellant had a key to her home, but she was unaware of his presence there that day. Ms. Bourque then took S.L. and C.S., who was at her grandfather's home, into protective custody. Ms. Bourque asked C.S. about appellant's visits to Sara's home; C.S. responded that appellant comes to the home approximately two days per week and that her grandmother is only present during these visits if Sara has to go somewhere, otherwise the majority of the visits were at her home and consisted of only the children, Sara and appellant.

Another social worker, Gabriel Garcia, received a follow-up referral that Ricardo, Jr. was a sibling or half sibling of S.L. and C.S., and was at risk of abuse and needed to be placed into protective custody. Ricardo, Jr. was then placed into protective custody.

The Agency submitted on the petition and the detention report. Sara's counsel submitted on the report, but disagreed with the recommendation. Sara's counsel argued that detention was inappropriate because most of the information in the detention report involved violation of court orders that did not involve Ricardo, Jr., so Sara's failure to comply with those orders was irrelevant to Ricardo, Jr.'s case, and the "allegation [under subdivision (j)] has not pled a prima facie case," since there was no evidence Sara was currently abusing drugs or that the home conditions were unsanitary, and no evidence that Ricardo, Jr. was at risk of sexual abuse. Sara's counsel stated: "If Ricardo, Jr. is not at risk because of any drug abuse, unsanitary home conditions, or sexual abuse, then the agency has not pled a prima facie case, and if there's no prima facie case, this child comes within the jurisdiction of the Court, detention—there must not be a detection [sic]. There can still be a petition, but the child must be released to the mother." Sara's counsel further argued there was no information in the detention report to show substantial danger to Ricardo, Jr.'s physical health, and therefore requested

that the court release Ricardo, Jr. to Sara's custody pending a hearing on the petition. Following Sara's counsel's argument, appellant's counsel stated: "We'll submit on the recommendations of the report, although there are several factual disputes from the report and we join [Sara's counsel's] request that the child not be detained."

The juvenile court ordered Ricardo, Jr. detained from appellant and Sara. With respect to application of the ICWA, the court found that it was unknown whether ICWA applied, and ordered the appropriate paperwork be filled out and submitted to the Bureau of Indian Affairs.

A jurisdictional/dispositional report was filed on July 8, 2002. The report stated that "[t]he Indian Child Welfare Act does or may apply," and that an "SOC 318 was submitted to the Bureau of Indian Affairs on 07/01/2002, with all known information on behalf of the child, [Ricardo, Jr.]." Regarding Ricardo, Jr.'s safety in the home, the report stated: "The siblings of [Ricardo, Jr.] were subjected to sexual abuse, domestic violence, unsanitary living conditions, use of illegal drugs by the parents and neglect. Although the parents have been given ample opportunity to address the above-cited issues, they have demonstrated that they are unable and unwilling to protect their children or utilize the skills and knowledge provided in the services offered. [¶] The non-compliance of the parents places the minor, [Ricardo, Jr.] at risk of abuse and neglect." The report further stated: "The parents, Sara . . . and [appellant], have previously been provided with a plethora of services which have included parenting education, substance abuse treatment (ADECC, Cornerstone AA/NA, drug testing), mental health services, codependency counseling, domestic violence counseling and anger management counseling. Although the parents did complete some of the Case Plan components, the knowledge gained did not prove successful in the protection of the children to include [Ricardo, Jr.]. [¶] For further detail regarding specific services, it is respectfully requested that he [sic] Court refer to the Detention Reports filed 02/18/2000 and 9/21/2000, the Jurisdictional/Dispositional Reports filed 04/05/2000 and 10/11/2000 and the Status Review Reports filed 03/30/2001, 09/27/2001 and 03/30/2002."

With respect to reunification services, the Agency recommended reunification services not be offered to the parents pursuant to section 361.5, subdivision (b)(10) in regard to Ricardo, Jr.[3] Specifically, the report stated: "[Sara] and [appellant] have been given an ample opportunity to demonstrate

[3]Section 361.5, subdivision (b)(10) provides in pertinent part: "(b) Reunification services need not be provided to a parent . . . described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (10) That the court ordered

their willingness to cooperate with the Court and ameliorate the risk to their children. The Agency has provided the family a total of twenty-nine (29) months of child welfare services which have included Family Reunification Services as well as Family Maintenance Services. [Appellant] has failed to successfully reunify with his children and [Sara], although successfully reunified with her children, has demonstrated that she is unable to protect her children from potential risk. [¶] [Ricardo, Jr.] is a sibling/half sibling to the above-described minors and would not benefit from Family Reunification Services with his parents." The report further explained: "The minor, [Ricardo, Jr.] has been placed at risk due to the inability of his mother to protect him. Although the Agency has made great efforts to assist the parents in eliminating the risk to the siblings of [Ricardo, Jr.], sadly they have shown an unwillingness to comply with Court orders as well as lack the ability to protect the safety and well being of the minor. [¶] It is unrealistic to expect that the parents would benefit from Family Reunification Services on behalf of the minor, [Ricardo, Jr.] as their intentions have been clearly demonstrated by their previous non-compliance with the Agency and the Court. [¶] It is the opinion of the undersigned that it would be in the best interest of the minor, not to provide the parents with Family Reunification Services and instead implement a permanent plan on [Ricardo, Jr.]'s behalf."

On October 4, 2002, a contested hearing began on a section 387 supplemental petition[4] the Agency previously filed with respect to S.L. and C.S., as well as the June 19, 2002, petition filed with respect to Ricardo, Jr. The hearing on the section 387 supplemental petition was held first. C.S., who was eight years old at the time of the hearing, testified that before she was detained in June, appellant lived with her, her mother, S.L. and Ricardo, Jr. C.S. testified that when appellant lived with them, appellant had sexually molested her between 10 and 20 times over the past year by rubbing her "private area," which she identified as her crotch area, and putting his finger inside her "front private part." C.S. testified that sometimes when this happened, appellant was the only adult present with the children. C.S. understood that she was removed from her mother because appellant was at the home with Ricardo, Jr. and S.L. without another adult present.

---

termination of reunification services for any siblings or half-siblings of the child because the parent . . . failed to reunify with the sibling or half-sibling after the sibling or half-sibling had been removed from that parent . . . pursuant to Section 361 and that parent . . . is the same parent . . . described in subdivision (a) and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from that parent . . . ."

[4]Section 387 applies whenever the juvenile court changes or modifies a previous placement order by removing a child from the physical custody of a parent, guardian, relative or friend and directing a more restrictive level of placement. (*In re Joel H.* (1993) 19 Cal.App.4th 1185, 1199 [23 Cal.Rptr.2d 878].)

Ms. Bourque testified about the referral she received on June 15 that appellant was in Sara's home in violation of a court order prohibiting him from residing at the home of Sara and her children. Ms. Bourque further testified that she and two police officers went to Sara's home to see if appellant was there. Sara's mother testified that while she supervised a "partial" visit at her house during the afternoon of June 15, she did not supervise a visit at the children's home.

Social worker Diane Scissons testified that she first learned of the alleged sexual abuse of C.S. on July 22, 2002, when C.S.'s foster mother called and reported that C.S. had told her that appellant had "done bad things to her." Ms. Scissons spoke with C.S., who told her about the molestations by appellant and also told her appellant had sodomized her. C.S. said she was molested more than 20 times. Ms. Scissons testified that appellant received family maintenance services beginning in October 2001, and prior to that time appellant was not residing in the home with the children. Ms. Scissons testified appellant completed an inpatient substance abuse program in March 2002.

Mrs. B., foster mother to C.S. and S.L. following their removal from Sara's home in June 2002, testified that C.S. told her that appellant had molested her. Mrs. B. then called child protective services. Mrs. B. testified that after the allegations surfaced, she had "a little bit of trouble" with C.S. sharing very detailed things about the molestation to her children. Soon after S.L. arrived, Mrs. B. started noticing S.L. engaging in "very abnormal behavior," such as constantly taking her clothes and diaper off, and a handful of times, she was found naked on top of a doll, which had also been stripped of its clothes.

Sara testified that appellant was not living at her home after the court ordered him out of the home, but she admitted he was at the home for visits when she was the only other adult present. Sara knew her mother was supposed to be present when appellant was visiting. Sara testified that appellant had been permitted to live in her home from September 12, 2001, to March or April of 2002. Sara testified she first learned on July 22 that C.S. claimed appellant had molested her. Sara learned S.L. had genital warts on the day a general examination was performed on S.L. Sara knew appellant was ordered to leave the home because he was not complying with his case plan.

Appellant testified he is S.L.'s father and he feels as if C.S. and I.S. are his own children. Appellant was aware of the court order that required him to have supervised visitations with his children and admitted there were times he visited the children when Sara, but not Elizabeth, was present.

Appellant said he had clothes in Sara's home because he didn't have enough space for them where he was staying. Appellant denied jumping out of the window at Sara's home on June 15. He also denied sexually abusing C.S. and S.L. Appellant denied having genital warts, although he had never been tested for them. Appellant admitted he was asked to leave the home because he wasn't complying with his case plan, and that in fact he was not complying because he was supposed to drug test and attend a "nonoffending program," which he was not doing.

The court found the allegations of the section 387 supplemental petition true and that the previous disposition had not been effective in the protection of the children. The court then proceeded with the hearing on the disposition with respect to the section 387 supplemental petition, hearing testimony from Sara's therapist. The court then continued the matter to October 11.

When the hearing continued, Sara testified about the treatment and counseling she was receiving, and what steps she was taking to ensure the protection of her children. Following argument, the court ordered family maintenance services terminated for Sara and family reunification services terminated for appellant, and set a hearing pursuant to section 366.26 to select a permanent plan for C.S. and S.L.

The court then proceeded with the jurisdictional/dispositional hearing on the petition pertaining to Ricardo, Jr. The Agency entered into evidence the petition filed on June 19, 2002, the detention report filed on June 20, 2002, and the jurisdictional/dispositional report filed on July 8, 2002. The Agency's counsel also asked the court to take judicial notice of the documents listed in its request for judicial notice filed on October 1, 2002, which documents county counsel stated were in the court's file. The court asked the other parties if there were any objections, and each party responded "no." The court then stated "[t]hat will be the order of the Court."[5] The Agency then rested.

Sara's counsel stated he would not be presenting any evidence, only argument, and agreed with the court that Sara would be proceeding under

[5]Both parties assert the court took judicial notice of the section 387 supplemental petition filed on behalf of C.S. and S.L. At the beginning of the jurisdictional hearing in Ricardo, Jr.'s case, the Agency's attorney stated: "In addition, your Honor, with regard to the 387 Petition, I had asked the Court to take judicial notice. My request was filed October 1st. I think that judicial notice also applies to the 300 Petition. And I ask the Court to take judicial notice of those documents with regard to this Petition." We read this statement as requesting the court to take judicial notice of the documents listed in the request for judicial notice filed on October 1, 2002, not as a request to take judicial notice of the section 387 supplemental petition.

"Melinda S.," giving up her right to cross-examine the maker of the social study reports. When the court asked what appellant's counsel would be doing on his behalf, she responded: "On behalf of [appellant], we are going to submit on the jurisdiction, but contest the disposition with respect to [Ricardo, Jr.]. I don't intend to cross-examine the maker of the report, nor do I plan to call witnesses. I intend to make an argument to the Court." The court then asked if she was presenting the case under "Melinda S." Appellant's counsel responded in the affirmative. The court asked appellant if he understood and gave up the right to cross-examine the maker of the report, and appellant responded, "Yes, sir." Ricardo, Jr.'s counsel submitted on the report for jurisdiction purposes, and agreed with the Agency's recommendation regarding disposition. The court then found the allegations of the petition true by a preponderance of the evidence.

The matter proceeded immediately to disposition. The Agency asked the court to follow the recommended findings and orders attached to the July 8 report, and argued that neither Sara nor appellant should receive reunification services pursuant to section 361.5, subdivision (b)(10). Sara's counsel argued that Sara should receive reunification services. During this argument, the court asked whether anyone objected to the court considering all of the testimony taken in the hearing on the section 387 supplemental petition. No one objected. Appellant's counsel argued that he should receive reunification services because Ricardo, Jr. was not at risk of being sexually abused. Ricardo, Jr.'s counsel argued that reunification services should be provided to the mother.

Before ruling on the matter, the court stated: "I want to make one comment here, is that father, for the last 18 months, has not done anything as to the reunification services as to the other children, and now we have the new child here. It appears that we would be starting a new proceeding here if I do grant the reunifciation [sic] services at all, which I am on the borderline of." The court then made its findings, stating that it had read and considered "the social worker's report and attachments and all the documents submitted herein." The court further found "that ICWA does not apply."

The court stated it was going to provide services to Sara, but not to appellant "because he hasn't done anything in 18 months, and I don't see any reason to spend the money on trying to reunify him at this point in time." The court found by clear and convincing evidence that reunification services be provided to the mother because it would be in Ricardo, Jr.'s best interest. The court found "by clear and convincing evidence that reunification services need not be advised [sic] to the father . . . pursuant to WIC

Section 361.5 paragraph ten, that the parents [*sic*] failed to successfully reunify the half siblings of the minor. Anticipated service [*sic*] will be terminated on their behalf."[6] The court also found that appellant had made insignificant progress on the case plan. The court ordered supervised visitation between Sara and Ricardo, Jr., but denied visitation to appellant, finding that visitation with appellant would be detrimental to Ricardo, Jr.

Appellant filed a timely appeal from the orders pertaining to Ricardo, Jr.

## DISCUSSION

Appellant contends the petition failed to state a cause of action or, alternatively, the juvenile court's jurisdictional finding was not supported by substantial evidence. Essentially, he argues that the petition failed to allege, and the evidence was insufficient to establish, that Ricardo, Jr. was at substantial risk of serious physical harm. We agree with appellant that insufficient evidence was presented at the jurisdictional hearing to support the juvenile court's jurisdictional finding under section 300, subdivision (j).[7]

### A. *Standard of Review*

When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214 [272 Cal.Rptr. 316].) In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. (*In re Steve W.* (1990) 217 Cal.App.3d 10, 16 [265 Cal.Rptr. 650].) In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

At a jurisdictional hearing, the juvenile court " 'shall first consider . . . whether the minor is a person described by Section 300, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him or her within the jurisdiction

[6]The court's written order with respect to denial of services states: "The Court finds by clear and convincing evidence that reunification services need not be provided to the Father Ricardo L[.], pursuant to WIC Section 361.5(b) subparagraph (10), in that: [¶] The parents [*sic*] have failed to successfully reunify with the siblings/half-siblings of the minor and it is anticipated that services will be terminated on their behalf."

[7]Since we find the evidence insufficient to support jurisdiction, we do not address appellant's contention that the petition failed to state a cause of action.

of the juvenile court is admissible and may be received in evidence. However, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300.' " (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 198 [23 Cal.Rptr.2d 482].)

"While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [2 Cal.Rptr.2d 429], italics omitted.) Thus previous acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. (*Ibid.*; *In re Steve W.*, *supra*, 217 Cal.App.3d at p. 22.)

B. *Waiver*

 Initially, we address respondent's claim that appellant waived his right to challenge the jurisdictional findings because appellant failed to object to those findings at the jurisdictional hearing. Respondent argues that, when appellant's counsel submitted the issue of jurisdiction and waived his right to cross-examine the makers of the social study reports, appellant was agreeing to a jurisdictional finding. Respondent is mistaken. This court has held that a parent waives his or her right to challenge a juvenile court's order when the parent submits the matter on the social worker's recommendation. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589 [30 Cal.Rptr.2d 575].) In *Richard K.*, we explained that a parent's submission on the social worker's recommendation amounts to an endorsement of the court's issuance of findings and orders in accord with the recommendation. (*Ibid.*) We distinguished that case from cases in which a parent submits a jurisdictional finding on a social worker's report. In such a case, the parent does not waive his or her right to challenge the evidence as insufficient to support a jurisdictional finding. (*Ibid.*)

In the present case, while appellant's attorney stated she was "going to submit on the jurisdiction," when this statement is read in context, it is apparent that appellant's attorney was submitting the matter based on the jurisdictional/dispositional report, not the recommendations. This is so because his attorney specifically stated that she did not intend to cross-examine the maker of the report prepared for the hearing or call any witnesses, and the court took appellant's waiver of his right of cross-examination. Such a submission acted as consent to allow the court to consider the report as the only evidence in determining whether the allegations in the petition were true. (*In re Richard K.*, *supra*, 25 Cal.App.4th at p. 589.) It did not preclude

appellant from challenging the sufficiency of the evidence to support the jurisdictional finding on appeal. (*Ibid.*) Consequently, we reject respondent's waiver argument.

## C. *The Section 300, Subdivision (j) Finding*

The juvenile court assumed jurisdiction over Ricardo, Jr. pursuant to section 300, subdivision (j), which provides in part: "The child's sibling has been abused or neglected, as defined in subdivision (a) [serious physical harm inflicted nonaccidentally], (b) [substantial risk of serious physical harm or illness], (d) [sexual abuse], (e) [severe physical abuse on a child under the age of five], or (i) [acts of cruelty inflicted by the parent or guardian], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

Thus, subdivision (j) has two prongs: (1) that "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e) or (i)"; and (2) "there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (*In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197 [101 Cal.Rptr.2d 760].)

The only evidence before the juvenile court during the jurisdictional hearing that Ricardo, Jr.'s siblings had been abused or neglected as defined in any of the listed subdivisions were the dependency petitions filed on behalf of C.S. and S.L. in April 2000 and September 2000. The petition filed in S.L.'s case reveals that jurisdiction was asserted over C.S. under section 300, subdivision (b) based on Sara's drug use, her unsanitary home and failure to provide appropriate mental health care for C.S., and asserted over S.L. under section 300, subdivision (b) based on appellant's drug use.[8] No evidence was submitted to show the factual basis for the jurisdictional findings.

Assuming the evidence presented was sufficient to support a finding that C.S. and S.L. had been neglected as defined in subdivision (b), there was certainly no evidence submitted to support a finding that there was a

---

[8]Although the petitions also contained allegations under subdivision (g), a jurisdictional finding under that subdivision cannot support a finding under subdivision (j), since subdivision (g) is not one of the enumerated subdivisions.

substantial risk Ricardo, Jr. will be neglected as defined in subdivision (b). ██ Section 300, subdivision (b) provides, in pertinent part, that a minor comes within the jurisdiction of the juvenile court if: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or . . . by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent ,or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

The statutory definition consists of three elements: (1) neglectful conduct by the parent of one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the child, or a "substantial risk" of such harm or illness. (*In re Rocco M., supra*, 1 Cal.App.4th at p. 820.) ██ Thus, to affirm the juvenile court's jurisdictional finding, there must be substantial evidence in the record that there was a substantial risk Ricardo, Jr. would suffer serious physical harm or illness from either Sara's or appellant's inability to adequately supervise or protect Ricardo, Jr., their inability to provide regular care of him because of their substance abuse, or their failure to provide him with adequate food, clothing, shelter, or medical treatment.

It appears that when the section 300 petition was filed in June 2002, the Agency was relying on the fact that C.S. and S.L. were still dependents, despite having been under the protection of the juvenile court for approximately 26 and 21 months, respectively, to show that the problems that led to their being declared dependents had not been corrected, thereby creating a risk of harm to Ricardo, Jr. No evidence was presented, however, of the problems that led to their being declared dependents, other than the allegations in the dependency petitions filed in the year 2000. There is no evidence of the substance abuse history of appellant or Sara—other than appellant's arrests in 1995 and 1996 for being under the influence of methamphetamine—or of their history of neglect or failure to provide shelter or medical treatment. Without the history of abuse and neglect, it is nearly impossible to determine whether Ricardo, Jr. is at risk of suffering from the same abuse and neglect.

In addition, there is no evidence of what problems remained after Sara and appellant received family reunification and maintenance services during the course of C.S. and S.L.'s dependency. For example, there is no evidence of exactly what family maintenance and reunification services appellant and Sara received, or what services they failed to complete. While the Agency

did list some services that were provided in the July 8 report, and admitted that the parents completed "some" of the case plan components, it did not specify which components were completed and which remained uncompleted. The Agency stated that "the knowledge gained [through completion of services] did not prove successful in the protection of the children," but stated no facts to support that conclusion.

Apparently in an attempt to fill in the evidentiary gaps, the Agency requested in the July 8 report that the juvenile court refer to prior detention, jurisdictional/dispositional, and status review reports filed in C.S.'s and S.L.'s cases for a history of the services appellant and Sara had received. There is nothing in the record, however, to show that the juvenile court ever took judicial notice of these documents, or actually considered them in determining whether to assume jurisdiction over Ricardo, Jr. Neither did the Agency attach the documents to the July 8 report. We can only conclude that these documents were not before the court in this matter.

The Agency contends there is evidence that appellant had not yet resolved his drug problem because he testified at the hearing on the section 387 petition that he was not drug testing. The Agency also contends the evidence presented in support of the section 387 petition that C.S. and S.L. were molested shows that Ricardo, Jr. is also at risk of abuse. None of this evidence, however, was before the juvenile court during the jurisdictional phase of the hearing on Ricardo, Jr.'s section 300 petition. As appellant points out, the court did not state that it was relying on the testimony taken during the hearing on the section 387 petition until *after* it found the allegations of the petition true. Therefore, it could not have considered the testimony taken at the section 387 hearing in deciding whether to find the allegations of the petition true. Neither did the court judicially notice *any* of the documents submitted in support of the section 387 petition. There is simply nothing in the documents the juvenile court did consider regarding either any alleged molestation of C.S. or S.L., or appellant's failure to drug test.

The only evidence presented to the juvenile court during the jurisdictional phase of the hearing to support the Agency's claim that Ricardo, Jr. was in substantial risk of harm was that appellant and Sara had violated a previous court order requiring him to have supervised visitation with C.S. and S.L., and conclusory statements that appellant and Sara had not completed all family reunification and maintenance services, and had not learned from the services they did complete. Absent specific facts of appellant's and Sara's noncompliance or their failure to learn from the services provided, as well as the effect on the children of that noncompliance or failure to learn, however,

we cannot presume that noncompliance or a failure to learn alone is sufficient to establish a substantial risk that Ricardo, Jr. will be abused or neglected. Neither can we presume that violation of the court order in June 2002 resulted in a risk of harm to Ricardo, Jr. without specific facts regarding the issuance of the order.

It appears from the record that there was a greater concern about Ricardo, Jr.'s safety than the evidence presented at the jurisdictional hearing shows, and that the court relied on evidence outside the record in Ricardo, Jr.'s case to assume jurisdiction over Ricardo, Jr.—evidence that we are not privy to. The record that we are presented with simply does not provide sufficient evidence from which we can infer that there was a substantial risk Ricardo, Jr. would be abused or neglected as defined in section 300, subdivision (b). While the Agency requested in its July 8 report that the juvenile court refer to documents in C.S.'s and S.L.'s cases, the Agency should have ensured that the court either took judicial notice of those documents or stated on the record that it had considered those documents, or the Agency should have attached the documents to the social worker's reports and incorporated them by reference. Similarly, while the October 11, 2000, minute order in S.L.'s dependency case refers to the case plan, the plan itself is not attached. As appellant points out, it is the Agency's burden to present sufficient evidence of the necessity for juvenile court jurisdiction, a burden it did not meet here. (*In re Chantal S.* (1996) 13 Cal.4th 196, 210 [51 Cal.Rptr.2d 866, 913 P.2d 1075].)

Since the Agency did not bear its burden of proving the section 300, subdivision (j) allegation, we reverse the jurisdictional order. The dispositional orders and all subsequent orders are moot. The Agency's request for judicial notice concerning compliance with the notice provisions of the ICWA is denied as moot.[9] Should the Agency decide to reinstitute dependency proceedings over Ricardo, Jr., we wish to remind the court and the Agency that this court requires social service entities to make a record of their compliance with the ICWA whenever they seek the foster care placement of or termination of parental rights to a child who may be eligible for Indian child status. (*In re H.A.* (2002) 103 Cal.App.4th 1206 [128 Cal.Rptr.2d 12].)

---

[9]On January 22, 2003, respondent filed an application to produce additional evidence, in which respondent requested we make a factual determination under Code of Civil Procedure section 909 that respondent complied with the notice provisions of the ICWA. By our January 31, 2003, order, we deemed the application to be a request for judicial notice and deferred ruling on the application.

## DISPOSITION

The jurisdictional order declaring Ricardo, Jr. a dependent of the court is reversed, and the dispositional order is vacated as moot.

Vartabedian, Acting P. J., and Cornell, J., concurred.