Filed 11/21/13  C.U. v. Super. Ct. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| C.U.,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SONOMA COUNTY,<br><br>     Respondent;<br><br>SONOMA COUNTY HUMAN SERVICES DEPARTMENT et al.,<br><br>     Real Parties in Interest. | A139483<br><br>(Sonoma County<br>  Super. Ct. No. 4202-DEP) |

C.U. (mother) petitions this court for an extraordinary writ pursuant to Welfare and Institutions Code section 366.26 and California Rules of Court, rule 8.452, seeking review of the juvenile court's findings and order establishing jurisdiction over her son, N.U. (minor), bypassing reunification services, and scheduling the matter for a permanency planning hearing.[1]  Mother asks this court to vacate these findings and order on the ground that the evidence in the record fails to establish that returning minor to her care would expose him to a substantial risk of serious physical harm or illness.  We deny the writ petition on the merits, and deny as moot mother's related request for a stay of these proceedings.

---

[1]  Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code, and all references to rules are to the California Rules of Court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2013, a petition was filed in Sonoma County pursuant to section 300, subdivisions (b) and (j), alleging that minor, born in July 2012, faced a substantial risk of suffering serious physical harm or illness as a result of mother's failure or inability to adequately supervise, care for or protect minor due to her substance abuse; and that minor's siblings, half-brother S.C. and half-sister A.U., had been abused or neglected, and there was a substantial risk minor would likewise be abused or neglected within the meaning of subdivision (a), (b), (d), (e) or (i) (hereinafter, section 300 petition). The section 300 petition was based on the following information.

On May 22, 2013, respondent Sonoma County Human Services Department (department) received a report that mother was in jail and minor's whereabouts were unknown. The reporting party also advised that mother was abusing drugs and not properly caring for minor by, among other things, leaving him with random people (including people she had just met) and not regularly changing his diapers, leading to chronic diaper rash. The department promptly confirmed mother's incarceration, which stemmed from her May 17, 2013 arrest for possession of a stolen vehicle.

The next day, social worker Billy Harville made an unannounced visit to mother's last known address, the residence of her brother, David, and his girlfriend, Jessica. Jessica, who answered the door, volunteered the following information. Mother had been kicked out of the house over two months ago due to her habit of leaving minor with the couple for days at a time without telling them where she was. A few months earlier, a friend of mother's left minor in a car seat on David and Jessica's front porch. Jessica called the police (a fact verified by police records), but mother arrived to take minor before the police arrived. Two days earlier, another friend of mother's called Jessica to ask if she would take minor, but Jessica declined. According to Jessica, mother's erratic behavior was caused by her drug use.

Social worker Harville also discovered from Indian Health that minor was, among other things, five months behind with certain of his immunizations and had been treated for a cough (November 15, 2012); asthma and possible injury from having rolled off a

2

bed onto a carpeted floor (December 10, 2012); diarrhea, diaper rash and a back rash (December 26, 2012); a rash, cough, fever and cold (February 6, 2013); and an all-body rash and cold (April 17, 2013). Also during this time period, mother missed or cancelled several of minor's appointments with Indian Health.

In addition, Harville discovered from mother's probation officer, Sharon Cooper, that mother had been released from custody the previous day, and had met with Cooper with minor. During this meeting, mother told Cooper she would stop using methamphetamines, apply to the Women's Recovery Center, and live with her aunt, Marcie Becerra.

The department also acquired information regarding minor's siblings. Specifically, A.U., born August 2009, had been the subject of section 300 petition brought under subdivisions (a), (b) and (j), which resulted in a permanent plan of guardianship with the child's maternal grandmother. During these proceedings, family maintenance was initially ordered, but one week later a supplemental petition was filed alleging further maintenance would not be appropriate.

S.U.'s case, brought under section 300, subdivisions (a) and (b), resulted in a permanent plan of guardianship with his paternal grandmother.[2] This guardianship followed sustained allegations that S.U., born in May 2008, had suffered bruising to the brain that neither mother nor father could explain. Reunification services were provided for a few months before being terminated.

Based on the totality of this information, the department sought and received a protective custody warrant for minor. Harville then made an unannounced visit to mother's aunt's house. Becerra told Harville that mother was not staying, and could not stay, at her house, and that she did not know where mother or minor were. Harville later located mother at criminal court, where she had a court date, and was told by mother that

---

[2]     Another petition was filed on S.U.'s behalf in July 2008 alleging mother had physically assaulted him. This petition was found true, and jurisdiction established, after mother admitted squeezing him tightly, putting her hand over his mouth and shaking him to stop him from crying. However, after S.U. sustained the bruises to the brain in September 2008, he was removed from the home and another petition was filed.

minor was at the home of mother's former foster parent, Sharon Stout. Harville went to Stout's house to retrieve minor, where he learned Stout had been caring for him for about two weeks. Stout also told Harville that, about a month earlier, during a one-month period of time when she had been caring for minor, mother arrived unannounced at her house to pick up minor. Stout, believing mother appeared under the influence, tried to stop her, but mother ran into the street yelling, "they're trying to kidnap my baby," before stopping and getting into a random van, which then drove off. Stout called the police, but mother returned a short time later and again left minor with her. Stout told Harville that, when minor arrived, he was suffering from severe diaper rash with open sores on the inside of his legs, diarrhea, cradle cap and a cold.

Harville later confirmed with the Sheriff's Department that mother had been arrested on May 17, 2013 for possession of a stolen car. He later learned that mother had also been arrested on June 9, 2013, again for possession of a stolen car, as well as resisting arrest, providing a false name and possessing drug paraphernalia (to wit, a "meth pipe").[3]

Following her June arrest, mother, an admitted methamphetamine user since age 15, told a social worker that she was trying to get into a drug treatment program from jail, but if she were unable to do so, she would likely just serve her time before getting high again.

On August 6, 2013, a contested hearing on jurisdiction and disposition was held, at which several witnesses, including mother, testified. Mother disputed several of the allegations in the department's jurisdiction and disposition report. For example, mother insisted she only left minor with two people – to wit, her cousin and her brother – and that she did so only because she was homeless. She further insisted that, whenever she left minor with her cousin at night, she would spend all day with him and would thereafter remain easily reachable by telephone. With respect to minor's health, mother

---

[3]     There are additional references in the jurisdictional report to mother having been arrested on April 27, 2013 and May 9, 2013; however, it is unclear from the record whether this information is accurate or redundant.

denied knowing he had chronic diaper rash and explained that she had taken him to Indian Health in January for his immunization, but Indian Health declined to administer it because minor had a stuffy nose and fever, and that she was thereafter unable to successfully reschedule. With respect to mother's substance abuse, she claimed not to have used methamphetamines since November 12, 2011, the day she discovered she was pregnant with minor. Prior to that date, she had been using for about four months. She relied on Narcotics Anonymous ("NA") to remain sober and to help with anger management issues. According to mother, she had been involved with NA since age 18 and preferred it to other more formal programs, which she believed were not worthwhile.

With respect to her recent arrests, mother insisted the possession-of-stolen-vehicle charges had been dropped. With respect to the charge for possessing a methamphetamine pipe, mother acknowledged having purchased it two days before her arrest, but insisted she had not actually used it.

Mother's longtime friend and former therapist, Katy Tiemann thereafter testified that mother was an excellent parent and had recently taken many positive steps in her life, including getting a drivers license, finding permanent housing and taking minor to all his well-baby check-ups.

After this contested hearing, the juvenile court found by a preponderance of the evidence that minor came within section 300, subdivisions (b) and (j), in that mother had failed to provide adequate care, supervision, or medical care, creating a substantial risk of minor suffering serious physical harm or illness; and that minor's siblings had been abused or neglected as defined in subdivision (a), (b), (d), (e) or (i), and there existed a substantial risk minor would likewise be abused or neglected. In making these findings, the juvenile court noted in particular that mother had failed to make reasonable efforts to deal with two of the problems that had led to her failure to reunify with minor's siblings – to wit, her substance abuse and inability or failure to protect her children from substantial risk of physical harm or injury. The juvenile court thus adopted the department's recommendation, based on clear and convincing evidence, to bypass reunification

5

services pursuant to section 361.5, subdivision (b)(10), and set the matter for a permanency planning hearing on November 21, 2013 pursuant to section 366.26.

Mother thereafter filed a timely notice of intent to file a writ petition and related request for a stay.

## DISCUSSION

Mother challenges the juvenile court's August 6, 2013 findings and order on the ground that the evidence was insufficient to prove the allegation in the section 300 petition that minor was at substantial risk of suffering serious physical harm or illness due to her failure to supervise or protect him and his siblings.[4] The following legal principles are relevant to this challenge.

Where, as here, a juvenile court's jurisdictional findings are subject to an evidentiary challenge, we apply the substantial evidence rule. "In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact . . . ." (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214, quoting *In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.) As such, we generally do not disturb a juvenile court's order unless it exceeds the bounds of reason. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

Here, in asserting jurisdiction over minor, the juvenile court found of particular significance the fact that "mother leaves the child with people and is gone – and contrary to her testimony – there is evidence . . . that people did not know where mother was.

---

[4] Mother does not challenge the juvenile court's findings that minor's siblings had been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e) or (i), and that mother had thereafter failed to make reasonable efforts to deal with the substance abuse and other parental fitness issues that had led to her failure to reunify with the siblings.

Mother was gone. Mother was not reachable. In effect, mother didn't necessarily know who was watching her child, notwithstanding her testimony. That, in the court's mind, raises a significant question as to the exposure of substantial risk of injury to this child." In addition, also taking into consideration the undisputed fact that minor's sibling sustained bruising to the brain while under mother's care, the juvenile court found mother had failed to demonstrate having taken reasonable steps to prevent further injury to minor or her other children.

With respect to minor's physical health, the juvenile court noted concerns regarding his ongoing and serious case of diaper rash and diarrhea, and his missed immunizations. According to the court, while these facts may not appear serious when viewed in isolation, they nonetheless suggest a substantial risk of harm when considered in conjunction with the other evidence of mother's parental shortcomings.

On appeal, mother does not challenge any particular finding of fact by the juvenile court. Rather, she contends the above-described record is not sufficient to prove any substantial risk of harm to minor, insisting that: "Ordinarily, diaper rash, diarrhea, the use of caregivers and a parent's own history with child protective agencies would not be enough to remove a child." We, however, reject mother's reading of the record. Resolving all conflicts in the evidence in favor of the department and indulging all legitimate inferences to uphold the juvenile court's decisions, as the law requires (*In re Jason L., supra,* 222 Cal.App.3d at p. 1214), we decline to disturb the court's finding that minor had suffered or was at substantial risk of suffering serious physical harm or illness due to mother's failure or inability to adequately supervise or protect him. (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) To identify just some of the aforementioned evidence supporting the juvenile court, we note that the department learned from a reporting party on May 22, 2013, that mother was in jail and minor's whereabouts were unknown; that she was abusing drugs and not properly caring for minor; and that she had in fact been leaving minor with random people, including people she had just met. The department subsequently confirmed much of this information by speaking to, among others, Jessica (mother's brother's girlfriend) and Sharon Stout (mother's former foster

7

parent, who was sometimes caring for N.U.). Both women described specific incidents of minor being left with persons unable or unwilling to care for him. For example, Jessica described an incident where someone other than mother left minor in a car seat on the couple's front porch during a time when mother's whereabouts were unknown. Stout, in turn, described an incident about a month earlier when minor was under her care. Mother arrived unannounced to retrieve minor and, when Stout tried to stop her because she appeared under the influence, mother ran into the street yelling, "they're trying to kidnap my baby." Mother then flagged down a random van, got inside with minor, and drove off. Both Jessica and Stout attributed mother's erratic and irresponsible behavior to her likely substance abuse and reported her behavior to the police.

Given this record, there is simply no basis for substituting mother's version of the facts for those accepted by the juvenile court. (*In re Jason L., supra,* 222 Cal.App.3d at p. 1214; *In re Ricardo L., supra,*109 Cal.App.4th at p. 564. See also *In re N.M.* (2011) 197 Cal.App.4th 159, 166 [" '[i]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant' "].) Moreover, as a legal matter, we reject mother's contention that the court and the department improperly relied upon her prior involvement in dependency proceedings "to elevate its assessment of the threat of risk to the minor." Mother is indeed correct to argue that "previous acts of [abuse or] neglect, standing alone, do not establish a substantial risk of harm." (*In re Ricardo L., supra,* 109 Cal.App.4th at p. 565; *see also In re Angelia P.* (1981) 28 Cal.3d 908, 925.) However, mother ignores that previous acts of abuse or neglect remain probative of risk of harm to the child when considered in conjunction with a parent's more recent alleged acts. As the California Supreme Court explains, "Past conduct is relevant on the issue of future fitness, although it is of course not controlling." (*In re Angelia P., supra,* 28 Cal.3d at p. 925. See also *In re Janet T.* (2001) 93 Cal.App.4th 377, 388 ["before courts may exercise jurisdiction under section 300, subdivision (b) there must be evidence 'indicating the child is exposed to a substantial risk of serious physical harm or illness' "].) Here, as we have just finished explaining, there is evidence of both past acts of abuse and neglect involving minor's siblings, as well as recent acts of neglect

8

involving minor, that demonstrate his ongoing exposure to a substantial risk of serious physical harm or illness. Mother's reliance on the aforementioned legal principle therefore offers no basis for reversal.

Finally, mother challenges as an abuse of discretion the trial court's decision to question the department's witness, social worker Kathryn Staley, at trial. According to mother, the "[trial court's] questions ascended well beyond that of an impartial trier of fact and entered into the realm of zealous advocate for the department" when "the court, apparently in an effort to refresh Staley's memory, read into the record an entry from one of social worker [Harville's] delivered service logs which was in the court file [about an incident alleged in the petition]." Our review of the record reveals no abuse of discretion by the trial court.

"It is well within the province of the judge to ask a witness questions, particularly when the judge is the fact finder. (Evid. Code, § 775.)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 423.) Here, the record shows that, in response to a department question regarding the allegation that mother left minor with people who appeared not to want to care for him, Staley identified a police report notation that mother "left him with a baby-sitter who no longer wanted to care for him, so then passed him on to the brother who was trying to locate the mom." The court then interjected: "So were there other examples of Mother leaving the child with other people?" Staley responded that she had in fact received multiple phone calls from persons concerned about minor's wellbeing due to mother's actions, and that she considered mother's behavior in this regard indicative of the serious risk of harm faced by minor. At this point, the court asked Staley whether she recalled a specific incident on May 22 to May 24, 2013, mentioned in the department's service log, during which mother's brother's girlfriend, Jessica, reported that: "[Mother] was kicked out of the house over two months ago. Said she suspects Mother is back on drugs. She said [mother] was kicked out because she would leave the baby with Jessica and David for days at a time, and [mother's] whereabouts were unknown." Staley then responded: "I have read that, Your Honor, but I don't have it in my version of the delivered service logs. [¶] I don't know why I omitted it."

9

This record, we conclude, provides no reasonable basis whatsoever for mother's suggestion that the juvenile court judge lacked impartiality. Indeed, to the contrary, the record reflects a competent and conscientious fact finder attempting to determine the validity of the department's allegation in the section 300 petition that mother negligently left minor in the care of others before asserting jurisdiction over minor. We thus reject mother's abuse-of-discretion claim and, further, deny her writ petition and request for stay for lack of any showing of error.[5]

## DISPOSTION

The petition for extraordinary writ is denied on the merits. (§ 366.26, subd. (l); Rule 8.452(h).) The request for a stay is denied as moot. Our decision is final immediately. (Rule 8.452(i); Rule 8.490(b).)


_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Pollak, J.


---

[5]     We caution mother and her counsel for future reference that: "It is . . . contemptuous for an attorney or party to make the unsupported assertion that the court is acting out of bias toward a party." (*In re White* (2004) 121 Cal.App.4th 1453, 1478.)

10