Filed 12/24/24 In re A.M. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | B332952 |
| | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 20CCJP03787A-C |
| Plaintiff and Respondent, | |
| v. | |
| C.C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Marguerite D. Downing, Judge. Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

## SUMMARY

The father in this dependency proceeding appeals from orders terminating jurisdiction over his three children and awarding sole legal and physical custody to mother with unmonitored visitation for father. He contends the orders were an abuse of discretion because there was no substantial evidence supporting them. Alternatively, he argues the award of sole legal custody to mother was an abuse of discretion.

We affirm the orders.

## FACTS

Father C.C. and mother N.M. have three children, A.M., born in 2016, El.M., born in 2018, and Er.M., born in 2019. The children were detained by the Los Angeles County Department of Children and Family Services (Department), and in July 2020, the children were removed from father and released to mother, with monitored visitation for father.

In September 2020, the court sustained allegations that father physically abused A.M. by striking the child with a belt, and that father and his female companion, D.J. (later his wife), had a history of domestic violence and of engaging in violent altercations in the presence of the children. (Welf. & Inst. Code, § 300, subds. (a), (b) & (j); further undesignated statutory references are to the Welfare and Institutions Code.) The allegations described three different incidents in April and June 2020. Allegations that mother failed to protect the children were also sustained.

Father was ordered to enroll in parenting classes, individual counseling, and a 52-week domestic violence program. Mother was ordered to participate in various family maintenance services.

2

In April 2021, the court found continued supervision to be necessary.

In September 2021, mother sought a psychiatric evaluation and was diagnosed with a mood disorder and given a referral for outpatient mental health services, but she was not prescribed any medication and was released home.

On April 20, 2022, the Department filed a status review report recommending mother be given sole physical and joint legal custody of the children. In that report, the Department stated there were ongoing issues regarding father's other dependency case with his wife D.J. "Due to the father[']s second open DCFS case with his wife, [D.J.], Father . . . reported that he currently does not have stable housing. Father reported that he is currently between places and lives between hotels, his pastor's home and at times at his place of business."

On May 13, 2022, the Department filed a subsequent petition under section 342, alleging that mother was "unable and unwilling to provide the children with ongoing care and supervision." Mother had reported that she felt "overwhelmed" and could no longer care for the children due to her mental health issues. She provided the Department with written and verbal consent to detain the children. Mother was "open and honest about her instability and lack of being able to continue to provide the children with the necessary care they need."

On May 16, 2022, the court ordered the children removed from mother, with monitored visitation and Department discretion to liberalize visits. In the May 13, 2022 detention report, the Department stated the children could not be placed with father because he was not in compliance with his court-ordered services, and in addition, "has another open case with the

3

Department in which he is receiving Family Reunification services for the child [M.C.]."

On June 1, 2022, the court ordered father to be removed from county jail, where he was then incarcerated, and transported to a June 17, 2022 adjudication hearing. Father had been arrested on May 26, 2022 for violation of a domestic violence court order, and the Department asked that his unmonitored visits revert to monitored visits. Father was released from jail but as of June 15, 2022, had not been responsive to Department attempts to contact him. The court temporarily limited father's visitation.

On July 21, 2022, the court sustained the Department's section 342 petition, removed the children from mother, ordered counseling, and ordered mother to participate in an Evidence Code section 730 evaluation and follow all recommendations. The court also granted the Department's request to revert father's visits to monitored visits.

The Department's July 21, 2022 report contained a full description of the April 2021 petition on behalf of father's other child, M.C., and the domestic violence allegations that were sustained against father and his wife D.J. in that case in July 2021. (This information appears in later reports as well.) The Department reported that father was "not in compliance with his Court ordered case plan regarding the child [M.C.] and he was recently incarcerated for several days for violating a protective order."

On October 20, 2022, the Department requested a "walk-on," because father was "exhibit[i]ng threatening and erratic behavior, and the Department is requesting a temporary restraining order for the children, the current caretaker, and the

4

former social workers."  The Department asked the court to set a hearing.  The next day, Judge Philip Soto, standing in for Judge Marguerite Downing, obtained father's agreement "not to harass, molest or annoy, or disturb" the two social workers and the caretaker; not to send any threats or messages to them; and not to go to the caretaker's home or visit the children there, calling this an "informal stay-away order."  The court set the matter for a progress report on father's visits and threats in a month's time, and stated that there would be no need for a restraining order "[i]f this has all been resolved."  The court told father he was "on a destructive path," and the court wished to guide him off that path.

On March 1, 2023, the court found continued jurisdiction necessary, and ordered the children placed at home with mother, with family maintenance services.  Father had not completed his programs and "housing appears to be an issue," so the court gave the Department "discretion to liberalize and or return the children to [father]."

At the final hearing on October 23, 2023, the Department recommended findings that continued court supervision was not necessary, and return of the children to father would create a substantial risk of detriment to their wellbeing.  The Department recommended termination of jurisdiction with sole physical custody to mother, joint legal custody and overnight visits for father.

The children's counsel argued for continued jurisdiction, mother agreed with the Department's recommendation, and father asked to close the case with joint physical and legal custody and overnight visits. The court terminated jurisdiction with sole legal and physical custody to mother, staying the order

until October 30, 2023, when the juvenile custody order was received, signed and filed.  The order also provides for unmonitored visits for father to be arranged between the parents, and overnights from Saturday at 10:00 a.m. to Sunday at 7:00 p.m. or any other agreed schedule, and specifies that father's wife, D.J., "may not be present during Father's visits with children."

Father filed a timely appeal.

## DISCUSSION

" 'When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child.' " (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.)  " '[T]he juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case.' [Citation.]  We review a custody (or 'exit') order . . . for abuse of discretion, and will not disturb the order 'unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " '  [Citation.]  ' " "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*Ibid.*)

Father's first argument is that the court's basis for the custody order was "the other case"—M.C.'s case—and that any evidence presented in that case "was not before the court in this proceeding, and is not before this Court on appeal."  Father asserts that the Department did not request judicial notice of any documents in M.C.'s case, or attach any documents from M.C.'s case to the social workers' reports, or even ask the court to refer

6

to any specific documents in M.C.'s case. Ergo, father concludes, there is no substantial evidence to support the custody order, citing *In re Ricardo L.* (2003) 109 Cal.App.4th 552 (*Ricardo L.*).

Father's analysis is faulty for multiple reasons.

The Department submitted three documents as exhibits at the hearing, to which father did not object. These were the status review report filed August 23, 2023 (dated Sept. 6, 2023), and "last minute" reports filed September 1, 2023 and October 17, 2023. The Department's risk assessment on August 16, 2023, was that the children were at low risk of future abuse or neglect under the mother's care, and at high risk of future abuse or neglect under the father's care. No other evidence or witnesses were produced by father or anyone else.

At the hearing, father's counsel argued for joint physical and legal custody, pointing to the case worker's report that the children "seemed happy when they were with their father" and that her observation during a visit "suggested a positive and engaging relationship" between father and children; and father had finished his case plan "besides a few weeks of D.V. [domestic violence]." Under questioning by the court, referring to the children's counsel's statement that father "only completed 35 out of the 52-week program," father's counsel admitted that "[h]e still has more D.V. to go."

The last minute information also stated that father and mother agreed on a schedule for father's overnight visits, after which father repeatedly complained to the social worker that mother did not pick up the children on time. Mother stated her excuses, and when the social worker said she had been informed in the past that the parents were coparenting well, "mother expressed that they would now have to work things out more

7

effectively or make additional efforts to co-parent successfully." This casts some doubt on father's counsel's argument that the parents "do now have a better working relationship."

In short, the record provides substantial evidence supporting sole physical custody to mother. This case began due to father's domestic violence, and when it ended, father still had not completed the domestic violence program he was first ordered to do in September 2020. In addition, stable housing was a problem. As of March 1, 2023, father's counsel admitted that father "might not be staying at one place specifically all the time," and the court observed that "housing appears to be an issue" for father. There was no evidence that father had obtained stable housing since that time; the report filed on August 23, 2023, stated that father "appeared to have some struggles such as lack of housing." These points amply support sole custody to mother.

Nor do we agree that the juvenile court "relied on evidence outside the record in this case." The record is replete with information about the domestic violence allegations sustained against father in the case involving M.C., starting with a status review report filed in April 2022, and continuing in subsequent reports. In the last minute information filed September 1, 2023, the social worker reported she was aware that father had monitored visits with M.C. At no time did father ever object to any of this evidence. (See *In re N.O.* (2019) 31 Cal.App.5th 899, 935 [" 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.' "].) Forfeiture applies in dependency litigation. (*Ibid.*)

In any event, *Ricardo L.* does not help father.  In that case, the court found there was insufficient evidence to support a finding of jurisdiction under section 300, subdivision (j) (where the child's sibling has been abused or neglected and there is a substantial risk the child will be abused or neglected).  (*Ricardo L., supra,* 109 Cal.App.4th at pp. 555, 566-567.)  There was no evidence submitted to show the factual basis for the jurisdictional findings in the case involving Ricardo's siblings (*id.* at p. 566), and even if the evidence was sufficient to show the siblings were neglected, "there was certainly no evidence submitted to support a finding that there was a substantial risk Ricardo, Jr. will be neglected as defined in [the applicable provision of section 300]."  (*Id.* at pp. 566-567; see *id.* at p. 567 ["[w]ithout the history of abuse and neglect, it is nearly impossible to determine whether Ricardo, Jr. is at risk of suffering from the same abuse and neglect"].)  The court took jurisdiction over the children in this case in 2020, months before the initiation of M.C.'s dependency proceedings.  *Ricardo L.* is entirely inapt.

Father argues that even if the evidence supported awarding mother sole physical custody—which it does—the trial court abused its discretion in awarding mother sole legal custody.  Father asserts the court had "no reasonable basis for issuing" the order.  He cites inapt authorities, and then cites facts about his "positive and engaging relationship" with the children and mother's statement that she and father are able to coparent well.  This is nothing more than an argument that we should weigh the evidence and substitute our judgment for that of the juvenile court, which we may not do.  Father has not shown the order was arbitrary, capricious or patently absurd.

9

Nor has father shown any prejudice from the order.  He asserts that he is now faced with "the more stringent burden of establishing a significant change in circumstances before a family law court may modify the exit orders."   That burden, however, does not constitute prejudice.

### DISPOSITION

The juvenile court's exit orders terminating jurisdiction and awarding mother sole physical and legal custody of the three children are affirmed.


GRIMES, Acting P. J.


WE CONCUR:



WILEY, J.



VIRAMONTES, J.