Filed 9/30/13  Eduardo L. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| EDUARDO L.,<br><br>          Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SONOMA COUNTY,<br><br>          Respondent;<br><br>SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>          Real Party in Interest. | A139225<br>(Sonoma County<br> Super. Ct. No. 4127-DEP) |

Eduardo L. challenges the dependency court's jurisdiction and disposition orders, and its order setting a selection and implementation hearing pursuant to Welfare and Institutions Code[1] section 366.26.  Eduardo contends no substantial evidence supports the court's determinations that (1) minor I.F. (minor) comes within section 300, and (2) Eduardo is a mere biological father to minor not entitled to reunification services.  He

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

seeks a writ compelling the dependency court to vacate its order bypassing reunification services and setting a hearing under section 366.26. We deny the writ.

## I. BACKGROUND

### A. *Detention and Petition*

On February 11, 2013, when minor was approximately six weeks old, the Sonoma County Human Services Department (Department) filed a petition under section 300, subdivisions (b) and (g) requesting formal detention of minor, following her mother's (Mother) arrest for violating parole and felony possession of methamphetamines. The petition listed four possible parents: Mother, alleged father, Shawn F., alleged father, Eduardo L. (petitioner herein), and legal father, Craig B., who was married to Mother. The petition alleged in separate counts that Mother had a substance abuse problem which placed minor at substantial risk of harm in her care; alleged father Eduardo L. had a substance abuse problem and a history of domestic violence, both of which placed minor at substantial risk of harm in his care, and that each of the four named parents were unavailable to care for minor.[2]

The petition alleged that Mother was arrested on or about February 7, 2013, and that Mother had used methamphetamines while pregnant with minor. It further alleged Eduardo was arrested for violation of parole and possession of a controlled substance on February 7, 2013, for possession of marijuana on November 16, 2004, and for transportation, distribution and importation of marijuana on May 20, 2011. A separate count alleged Eduardo had a history of domestic violence, including two arrests in 2004, which placed minor at substantial risk of harm in his care.

A prima facie memorandum filed by the Department attached a summary of the social worker's February 9, 2013 in-custody interview of Mother. She stated she moved to Santa Rosa with the biological father, Eduardo L., because she was homeless and living in shelters in Alameda County and Eduardo had picked her up two weeks earlier

---

[2] The petition alleged Mother and Eduardo were incarcerated at the Sonoma County Main Adult Detention Facility and the whereabouts of alleged father Shawn and "presumed" father Craig were unknown.

2

and offered her his home. Shawn was with Mother during the last four to five months of her pregnancy and he agreed to be named as the father on minor's birth certificate. She did not know Shawn's whereabouts but believed he was incarcerated.[3] Mother stated she was still married to Craig, and had last heard he was in prison. Mother stated methamphetamine was her drug of choice, and she had last used it at the start of her pregnancy before she knew she was pregnant. Mother had two other children who were under the legal guardianship of her mother. Mother admitted to an extensive criminal history including substance abuse. Mother explained she was arrested because of drugs found in the home she was sharing with Eduardo. According to Mother, the drugs found at in the home belonged to Eduardo's mother.

The social worker also interviewed Eduardo L. He stated he was not sure if he was minor's father and wanted a DNA test. He stated he had taken Mother to live with him over a month earlier because he did not want minor to live in a homeless shelter.[4] He stated the drugs found in the home belonged to Mother. Eduardo said Mother had "a huge substance abuse issue" but denied any substance abuse on his part. He said he was hardly home but made sure Mother had food to eat and a roof over her head. He was interested in visits with minor even if he was not the biological father.

According to the police report of Mother's arrest, police were dispatched to an address in Santa Rosa to check on the welfare of Mother and her female infant. Mother, Eduardo's mother, and the infant were home, and the infant did not appear to be in distress. Mother initially informed police "Eddy" didn't actually live at the address, and the townhome belonged to Eduardo's mother. Eduardo was not present, but the police were able to reach him on the telephone and he said he was in Marin. Apparent methamphetamine was found in a parole search of Mother's living space in the residence.

---

[3] The social worker learned Shawn had been released on February 1, 2013, but his whereabouts were unknown.

[4] Mother and Eduardo's mother both stated Mother had been staying there for two weeks.

Following discovery of the drug, Mother told police Eddy shared the room with her, contradicting her earlier statement that he did not live there.

At the conclusion of the detention hearing held February 13, 2013, the dependency court ordered minor detained pursuant to section 319, ordered Eduardo L. to submit to paternity testing, and set the matter for a jurisdiction hearing. On March 7, 2013, Eduardo filed a "Statement Regarding Parentage" with the dependency court. Eduardo indicated in his statement that if the DNA test results proved he was indeed the biological father, he would "accept full responsibility." He listed Mother as the only person he had told that the child was his. He stated he was willing to attend all classes or services needed to get custody of minor, and willing to provide for minor if needed due to Mother's lifestyle.

## B. *Jurisdiction Report*

The Department filed a jurisdiction report on March 11, 2013, recommending the court find the petition true. The report indicated Craig B. was the presumed father and was incarcerated at the Sierra Conservation Center with an expected release date of July 2015. Despite a diligent search, the Department was unable to make contact with alleged father Shawn F. Both Mother and Eduardo believed Eduardo was the biological father of minor.

The report detailed Eduardo's lengthy criminal history, which included convictions for child cruelty involving possible injury or death, battery, battery against a police officer, battery against a custodial officer, evading a police officer, and stalking. Eduardo's criminal history also included two arrests in 2004 for domestic violence, as well as arrests for willful cruelty to a child, assault with a deadly weapon (two arrests), threatening crime with intent to terrorize, possession of a controlled substance, and transportation and importation of marijuana. Eduardo denied having a substance abuse problem. He indicated he "might have been arrested" for domestic violence but claimed the allegations were false and he was never charged.

4

Eduardo was on parole at the time with a discharge date of July 10, 2013. In March 2013, Eduardo was released to Immigration Customs Enforcement and was awaiting deportation in a holding facility.

The jurisdiction hearing was continued to April 17, 2013, so that Craig could be transported from prison.

## C.  *Disposition Report*

On April 16, 2013, the Department filed its disposition report recommending family reunification services not be provided to the alleged fathers Eduardo and Shawn and recommending reunification services not be provided to presumed father Craig as he was incarcerated with a release date of July 2015. The Department recommended Mother be bypassed for reunification services pursuant to section 361.5, subdivision (b)(13) and a hearing set pursuant to section 366.26.

The disposition report contained the following information from Eduardo: He was involved with Mother for a short time. He was aware she was pregnant and intended to be involved in his child's life. When asked by the social worker what efforts he made to be involved throughout Mother's pregnancy or during the birth of the child, Eduardo merely stated that he expected Mother would be in touch with him. He had a friend who gave him updates regarding Mother. Eduardo said Mother "ran off" and he did not know how to reach her. A few weeks after minor was born, Mother contacted Eduardo and informed him she and minor were homeless and had nowhere to go. Eduardo made arrangements for Mother and minor to come live with him at his mother's home. Eduardo "asked [Mother] to take a test so he would know that she [minor] was his child."

Eduardo stated he was involved in feeding, changing, and watching minor while she was in his home, and it was his intention to change minor's first and last name as he would like minor to have his name. At one point he said he "would not take a child that was not his blood," but later stated he felt attached to minor and would want to raise her in his home as his daughter even if he was not minor's biological father.

On February 21, 2013, Eduardo informed the social worker that he wanted to take care of his child and was fit for this task. Eduardo stated he "knew the woman was

5

pregnant with a child, and wanted . . . to get correct." Eduardo stated he would volunteer for weekly drug testing and said he had friends and family who could assist him with caring for minor. The Department had provided weekly supervised visitation for Eduardo but, after careful evaluation, did not feel it was in the best interest of minor to continue visitation until paternity was established.

On April 17, 2013, Mother requested a settlement conference.

On May 21, 2013, Eduardo filed a "Petition to Establish Parental Relationship."

### D. *Addendum Report*

The Department filed an addendum report on May 29, 2013. It had received genetic test results confirming Eduardo L. was the biological father of minor. The Department was requesting Eduardo be found a mere biological father not eligible for reunification services. It also recommended finding Shawn F. was not a father and that Craig B. not be offered services pursuant to section 361.5, subdivision (e)(1) due to his incarceration and lack of relationship with minor.

On May 29, 2013, Mother requested a contested jurisdiction/disposition hearing, which was set for June 24, 2013. The court raised Eduardo L. to "biofather" status and found Shawn F. "not a Father."

### E. *Contested Jurisdiction/Disposition Hearing*

At the contested hearing on June 24, 2013, Mother submitted on the disposition report and recommendation. Eduardo L. was in custody in Alameda County and was represented by counsel. Through counsel, Eduardo requested presumed father status. Counsel asked to reserve the right to argue jurisdictional issues as to Eduardo.

County counsel pointed out Eduardo L. was not present to provide additional evidence, and the evidence before the court—the prima facie memo and documents, the jurisdiction report, the disposition report, and the addendum—did not include any indication Eduardo had held out minor as his natural child. Eduardo did not provide aid during the pregnancy even though he was aware of it. Counsel further argued against Eduardo's petition to establish a parental relationship because the request was not prompt, as Eduardo waited almost six months after minor's birth, and then, took action

6

only after court-ordered DNA testing confirmed his paternity. Counsel for minor supported the Department's recommendation that Eduardo be deemed a mere biological father, and pointed out that it was another man, not Eduardo, who had been with mother during pregnancy and delivery.

Eduardo's counsel first addressed the jurisdictional allegations against his client. Counsel argued the section 300, subdivision (g) allegation did not address Eduardo's inability to make arrangements for the care of minor, pointing out he had previously been able to enlist his mother's assistance in her care. As to the section 300, subdivision (b) allegations, counsel asserted there was no nexus between Eduardo's drug and domestic violence record and any current risk to minor.

Eduardo's counsel further argued Eduardo had taken minor into his home when Mother requested his help, and held minor out as his own child during that time, although it was "brief." He maintained a balancing of presumptions favored Eduardo over Craig, as he had at least stepped forward. Eduardo also argued that even if he were not a presumed father, he should be considered the functional equivalent of a presumed father based upon *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*) because he stepped forward to assume a parental commitment. County counsel disputed whether there was any evidence Eduardo held the child out as his own during the two weeks he let Mother stay in his mother's house.

The dependency court found it was not a matter of competing presumptions as Eduardo was not elevated to presumed status. The court ruled Eduardo did not rise to the level of presumed father and found him a mere biological father based upon the evidence that his actions were "insufficient, inadequate as a matter of law to elevate his status." The court stated: "[J]ust based on the facts what occurred from the date of conception to the date of the filing of the petition, there is inadequate effort, inadequate evidence to support an elevation to presumed father. [¶] Accordingly, with that, the Court will find that he is a mere biological father."

The dependency court adopted the findings and orders recommended by the Department in its jurisdiction and disposition reports, and set a hearing pursuant to

7

section 366.26.  On July 5, 2013, Eduardo filed a timely notice of intent to file a writ petition.  The present petition for extraordinary writ and request for a stay was filed on August 12, 2003.

## II.  DISCUSSION

Eduardo L. contends (1) no substantial evidence supports the dependency court's finding of jurisdiction; (2) he qualifies as a presumed father under Family Code section 7611, subdivision (d) or, in the alternative, he should be determined to be the equivalent of presumed father because he stepped forward to assume full parental responsibility.

### A.  *Jurisdiction*

Eduardo contends insufficient evidence was presented to the court that minor was at risk of serious physical or emotional harm as a result of his substance abuse or domestic violence, or that he could not provide for her care despite his incarceration.

The substantial evidence test is the appropriate standard of review for jurisdictional findings.  "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value."  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)  "In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]  In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason."  (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

"The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm."  (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134.)  Minor was removed from a home where methamphetamine was discovered in a room Mother stated she shared with Eduardo.  Eduardo was arrested for violating his parole and possession of a controlled substance based on that incident. Eduardo had previously been arrested in 2011 for simple possession of marijuana, possession of marijuana for sale, and transportation, distribution, or importation of

8

marijuana, and in 2004 for possession of marijuana.  Regarding the 2011 arrest, Eduardo admitted he "got caught with a large amount of marijuana" (about 2.5 pounds) and his medical marijuana card had expired.  He also had convictions for child cruelty involving possible injury or death, battery, battery against police officers, and stalking, as well other arrests for violent conduct.  In total, he had been arrested on 20 different charges involving drugs, violence, or threats.

In our view there was sufficient evidence in the record of Eduardo's involvement with drugs and history of violent behaviors both within and outside of domestic settings to support the dependency court's jurisdictional findings as to him under section 300, subdivision (b).  His lengthy series of arrests and convictions for violent conduct over an extended period established a pattern that was likely to recur.  His conviction for child cruelty involving possible death or injury is especially troublesome.  The absence of *recent* incidents of *domestic* violence does not neutralize Eduardo's history.  There was no evidence he had been in a domestic relationship since the incidents in 2004.  His relationship with Mother was very brief.  Even during the two weeks Mother and minor lived at his mother's home it was not clear how much time, if any, he spent with them.  In view of his entire history, the absence of recent domestic violence incidents does not eliminate the risk of harm to minor.

We need not reach the allegation under section 300, subdivision (g) that Eduardo was in custody and unable to support or provide for the minor.  We note, however, Eduardo's assertion he had proved he could make arrangements for minor's care at the time of the jurisdiction hearing because his mother, was already assisting with minor's care at the time of her removal.  If anything, that claim tends to support the Department's allegation that Eduardo could not provide for minor's care.  Methamphetamines had been found in Eduardo's mother's home, and it could not be ruled out the drugs belonged to her.  At a minimum, Eduardo's mother had allowed Mother to continue using methamphetamine in the home at a time when Mother was primarily responsible for the care and protection of a one-month-old infant.  By Eduardo's mother's own admission she had allowed Mother to bring strangers into the home who made her uncomfortable.

9

Since the only provision for minor's care Eduardo offered at the time of the jurisdiction hearing was patently inadequate to ensure her safety from harm, the allegation of subdivision (g) was properly sustained.

Moreover, all parties agreed Mother had a serious drug abuse problem. The section 300, subdivision (b) and (g) allegations against her were undisputed. Those findings were sufficient in themselves to support the dependency court's jurisdiction over minor without regard to the findings concerning Eduardo. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491–1492.) A jurisdictional finding against one parent is good against both. (*Id.* at p. 1492; see also *In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.) We find the dependency court was correct in finding minor came within its jurisdiction under section 300.

## B. *Parental Status*

Eduardo contends he qualifies as a "presumed father" under Family Code section 7611, subdivision (d) because he "receive[d] [minor] into his home and openly [held] out the child as his natural child." Only a "presumed father" and not a mere "biological" father is a "parent" entitled to reunification services under section 361.5, subdivision (a). (*In re Zacharia D.* (1993) 6 Cal.4th 435, 448–449, 451.) He states he qualifies as a presumed father because he brought minor into his home and provided for her, and he filed documents with the court requesting the relationship be formalized.

We agree with the dependency court that Eduardo failed to show he is a presumed father. He did not receive minor into his home and openly hold her out as his natural child. He allowed minor to live with his mother for a couple of weeks, and may not even have lived there himself. He admitted in any event that he was "hardly home" and referred to the townhome as "his mother's home." (See *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1653 (*Spencer W.*) [appellant did not take minor child into *his* home when evidence showed that mother permitted him to reside in *her* home].)

There is also no evidence Eduardo held minor out as his child. He initially questioned paternity and indicated to the social worker he "would not take a child that was not his blood." While he was aware of Mother's pregnancy he took no steps to assist

10

Mother or assert paternity until this proceeding was filed. He did not petition to establish a parental relationship to minor until more than three months after the proceeding was initiated. By his own admission, Eduardo told no one other than Mother that the child was his before this proceeding began.

It was Eduardo's burden to prove the foundational facts giving rise to the presumed father status. (*Spencer W., supra*, 48 Cal.App.4th at pp. 1652–1653.) The question for this court is whether substantial evidence supported the trial court's determination that he did not. (*Id.* at p. 1654.) The preceding evidence is sufficient to uphold the trial court's determination.

Eduardo asserts he is nonetheless entitled to receive services under *Kelsey S.* which held: "If an unwed father promptly comes forward and demonstrates a full commitment to his parental responsibilities—emotional, financial, and otherwise—his federal constitutional right to due process prohibits the termination of his parental relationship absent a showing of his unfitness as a parent." (*Kelsey S., supra*, 1 Cal.4th at p. 849.) Under *Kelsey S.*, the court considers the father's conduct before and after the child's birth: "Once the father knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit. In particular, the father must demonstrate 'a willingness himself to assume full custody of the child—not merely to block adoption by others.' [Citation.] A court should also consider the father's public acknowledgement of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child." (*Ibid.*, fn. omitted.)

None of these factors weigh in favor of Eduardo. He knew of Mother's pregnancy and of Mother's serious drug problems, but took no steps to assume any parental responsibility—financial or otherwise—until Mother called him and asked for help because she was homeless. At that point, Eduardo allowed Mother and minor to stay in his mother's home, and provided food and shelter, but he was "hardly home." He did not claim parenthood or offer any commitment to be a parent until after the DNA test results showed he was the biological father. When asked by the social worker what efforts he

11

made to be involved during Mother's pregnancy or during the birth of the child, Eduardo merely stated that he expected Mother would be in touch with him. The trial court's determination Eduardo did not promptly come forward or demonstrate a full commitment to parental responsibilities is supported by substantial evidence.

## III.  DISPOSITION

Eduardo L.'s petition for a writ compelling the dependency court to vacate its order bypassing reunification services and setting a hearing under section 366.26 is denied.  Due to the imminence of the section 366.26 hearing, and in accordance with California Rules of Court, rule 8.490(b)(3), this opinion shall be deemed final as to this court upon its filing.

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.

12