Filed 4/16/14  In re Ricardo S. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re RICARDO S., a Person Coming Under the Juvenile Court Law. | B250040 |
| | (Los Angeles County Super. Ct. No. CK97861) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LUIS S., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Amy M. Pellman, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Luis S. (Father) challenges the juvenile court's jurisdictional and dispositional orders regarding his son, Ricardo S., a dependent child. (Welf. & Inst. Code, § 300, subd. (b).)[1] For the reasons set forth below, we reject Father's contentions and affirm.

## BACKGROUND

Ricardo was born in July 1998 to Ana E. (Mother) and Father. After the parents separated in 2010, Mother requested custody of Ricardo in a family law action. In January 2012, the family law court awarded joint legal custody to both parents. The court granted Mother primary physical custody over Ricardo, who was to live with Mother during the week and with Father on alternating weekends.

On January 24, 2013, Father contacted the Downey Police Department, which dispatched an officer to Mother's home. The officer left after finding no evidence of a crime.

On February 3, 2013, Father took Ricardo to the Downey Police Department to report that Mother was "going into the bathroom when Ricardo [was] showering and Ricardo had to hide his private parts." The officer concluded that Mother should respect Ricardo's "boundaries," but that no crime was committed.

On February 11, 2013, Father obtained a temporary restraining order (TRO) that placed Ricardo in Father's sole legal and physical custody, and prohibited Mother from coming within 100 yards of Ricardo or Father. The TRO was issued based on letters,

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

Section 300, subdivision (b) provides in relevant part that the juvenile court may find that a child is a dependent child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left."

purportedly written by Ricardo, which stated that Mother was "spooning" with Ricardo in bed and entering the bathroom when Ricardo was showering.

On February 12, 2013, Mother and Ricardo met with a children's social worker (CSW) from the Los Angeles County Department of Children and Family Services (DCFS). After the CSW was informed of the TRO and letters purportedly written by Ricardo, the CSW questioned Ricardo about the letters. Ricardo denied writing the letters and began to cry. Ricardo told the CSW that "he wanted to call his father and ask him to cooperate with DCFS." Ricardo complained that his stomach hurt, that he had "to throw up," and that if he could not go to the bathroom immediately, he would "urinate on himself in the interview room." The CSW, who had attended an earlier meeting at which Ricardo had expressed a desire to hurt himself as a result of being placed in the middle of his parents' custody dispute,[2] concluded that both parents were "emotionally abusing" Ricardo, who was "suffering physical pain and urges to hurt himself."

On February 13, 2013, DCFS obtained an expedited order for Ricardo's immediate detention in the home of his maternal aunt. On February 20, 2013, DCFS filed the present dependency petition, alleging that both parents were endangering

---

[2]     The December 13, 2012 meeting was attended by the CSW, Mother, Father, Ricardo, and several family friends and relatives. At the December 13 meeting, Ricardo stated that his parents had placed him in the middle of their custody dispute, that it was difficult for him to choose one parent over the other, and that he could not cope with his parents' problems. Ricardo began to cry and said that he "wanted to hit himself on his body (stomach area) to feel pain because he felt num[b]."

At the December 13 meeting, Peggy (a family friend) expressed her concern that Father was lying in order to get Mother in trouble with DCFS. Peggy believed that Father and his friend Rigoberto had coached Ricardo to write letters stating that he wanted to hurt himself if he could not live with Father. Denise (also a family friend) stated that Mother sets rules for Ricardo, but Father allows Ricardo to do whatever he wants. Denise believed that Mother and Father had placed Ricardo in the middle of the child custody dispute.

At the end of the December 13 meeting, both parents agreed to a voluntary family maintenance service contract to address family issues and concerns. They also agreed to enroll in individual counseling and parenting and alcohol counseling.

3

Ricardo's physical and emotional well-being by (1) driving with Ricardo while intoxicated, and (2) embroiling Ricardo in their custody dispute.[3]

On February 21, 2013, Father obtained a second TRO that prohibited Mother from having any contact with Father or Ricardo, other than court-ordered visitation.

On May 24, 2013, the juvenile court held a jurisdictional hearing that was contested only by Father.[4] In addition to receiving DCFS's written reports,[5] the court heard testimony by Father and Ricardo.

As to the count b-1allegation—driving with Ricardo while intoxicated—the court was not convinced by Father's testimony that he had not driven while intoxicated for "many, many years." Instead, the court believed Mother's statements (as reflected in DCFS's reports) that Father had driven with Ricardo while intoxicated on "numerous"

---

[3] The petition alleged—in count b-1 as to Father and count b-2 as to Mother—that on at least one occasion, each parent had driven with Ricardo while intoxicated, thus placing Ricardo at risk of physical harm.

The petition further alleged in count b-5 that both parents had "enmeshed" Ricardo in their "ongoing custody dispute since 2011." The petition alleged that Mother "spoke negatively about [Father] in front of [Ricardo]," that Father had "caused [Ricardo] to be involved unnecessarily in a family law dispute," and that both parents had "caused [Ricardo] to be interviewed by law enforcement officers and child protective service workers on numerous occasions." The petition alleged that by their conduct, the parents had "place[d] [Ricardo] at risk of physical & emotional harm."

[4] Mother, who is not a party to this appeal, pleaded no contest at the jurisdictional hearing.

[5] According to DCFS's detention report filed on February 21, 2013, the CSW believed that Father had "coerced" Ricardo into writing several letters accusing Mother of "inappropriate behavior," including "criminal activity and sexual deviance." The CSW stated that after the December 13, 2012 meeting at which the parents had agreed to participate in family maintenance services and counseling, Father became "extremely noncooperative," refused to allow the CSW to assess his home, refused to accept any personal responsibility for the situation, and placed "all the fault and blame on mother." In addition, the CSW stated that Father had secretly recorded calls to DCFS and improperly allowed his friend Rigoberto to "attend" the December 13, 2012 meeting via telephone without disclosing that fact to the other participants.

4

occasions.[6] The court expressed concern that Father had failed to provide any objective proof that he was not drinking alcohol, stating: "Do I have any proof today that you are not drinking? None at all, not one piece of evidence, Sir, not one." The court found that Father's "unresolved alcohol abuse problem" was interfering with Father's ability to work, visit with Ricardo, return phone calls, and act "reasonably."

As to the count b-5 allegation—embroiling Ricardo in the custody dispute—the court found that Father had placed Ricardo in the middle of the custody dispute, which was causing Ricardo to suffer physical and emotional harm. The court stated: "[Ricardo] is a 14-year-old boy. He wants to be with a male figure, and he wants to be with [Father]. He was extremely protective of [Father]. And the testimony that he made was protective of [Father], and I didn't believe much of what he said in regard to [Father]. I believe some of it, but when he said he didn't remember certain things, it was the court's conclusion that much of what he said was to protect [Father] in the hopes that this court would allow him to live with [Father]. He testified that he wrote that letter while he was in [Father's] custody, that [Father] assisted him with that letter. He said he was nervous. He started to cry. He didn't like that his mother called [Father] a dead beat dad." In comments directed at Father, the court pointed out that because Ricardo missed his father, he "made all kinds of excuses for you, Sir, as to why you have not seen your child in these last few months while this case has been ongoing. You didn't even actually try to make very many excuses when you testified."

---

**6** The court stated in relevant part: "I have testimony from [Mother] in the jurisdiction report where she indicates that on numerous occasions she and [Father] partied and drove together, and [Father was] driving numerous times with [Ricardo] in the car." "On page 10 of the jurisdiction dispo report, [Mother] was asked if she was a passenger in the vehicle when father was driving under the influence of alcohol. The mother said yes." "So was [Ricardo] at risk of harm? Absolutely."

Ricardo, on the other hand, testified that he could not recall being in the car when Father was intoxicated. Ricardo stated that it had been "a while" since Father drank alcohol in his presence, but there were times when Father would drink until he "passed out."

5

The court declared Ricardo a dependent child under section 300, subdivision (b). The court found, by clear and convincing evidence, that Ricardo was at substantial risk of physical and emotional harm, that there were no reasonable means of protecting him without removing him from both parents' custody, that reasonable efforts had been made to prevent or eliminate the need for removal, that his present placement was necessary and appropriate, that the case plan was necessary and appropriate, and that DCFS had provided reasonable services. (§ 361.)

The court placed Ricardo at home with Mother under DCFS's supervision and granted family maintenance services. The court allowed Father to have monitored visitation three times a week. In addition to requiring Father to participate in random alcohol testing and counseling, the court ordered both parents to attend parenting programs and to participate in a full drug/alcohol program with aftercare and drug and alcohol testing. The court set the matter for a six-month review hearing on December 10, 2013. (§ 364.) Father timely appealed from the May 24, 2013 jurisdictional and dispositional orders.

## DISCUSSION

### I.       Standard of Review

"'On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.] The term "substantial evidence" means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]' (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) 'In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]' (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)" (*In re E.B.* (2010) 184 Cal.App.4th 568, 574-575.)

## II.    The Jurisdictional Findings Are Supported by Substantial Evidence

Father contends the evidence was insufficient to sustain the count b-1 allegation that Ricardo was at risk of serious physical harm as a result of Father's unresolved alcohol problem and prior instances of driving with Ricardo while intoxicated. Although Father denied having a current alcohol problem, the trial court was entitled to believe Mother's observations that Father had driven with Ricardo while intoxicated on several occasions. We therefore conclude the evidence supports the jurisdictional finding under count b-1.

Father also challenges the sufficiency of the evidence to sustain the count b-5 allegation that Ricardo was at risk of serious physical harm as a result of Father's efforts to involve him in the custody dispute. We conclude DCFS's reports—which contained the observations and comments of family friends, the CSW, and Mother—strongly supported the trial court's finding that Father had placed Ricardo at risk of physical harm (including self-harm) by encouraging him to write letters that were critical of Mother and resulted in the issuance of a TRO that precluded Mother from coming within 100 yards of Ricardo. The trial court received ample evidence from which to find that Ricardo had threatened on several occasions to injure himself as a result of being enmeshed in his parents' conflict. We therefore conclude the evidence supports the jurisdictional finding under count b-5.

In his supplemental opening brief, Father contends the juvenile court erred in sustaining count b-5 based on both physical *and emotional* harm. Father argues that because emotional harm is not mentioned in section 300, subdivision (b), the court erred in sustaining count b-5 based on emotional harm. We conclude, however, that the finding of emotional harm was superfluous to the finding of serious physical harm. We therefore reject the contention of error.

## III. The Family Maintenance Orders Were Within the Juvenile Court's Discretion

Father contends that because the evidence was insufficient to support the jurisdictional findings, the juvenile court's family maintenance orders—particularly the requirements that Father participate in a drug and alcohol treatment program, drug and alcohol testing, a 12-step program, aftercare services, parenting classes, a parents beyond conflict workshop, and alcohol testing—were unnecessary and inappropriate. The contention lacks merit. As previously discussed, we conclude the jurisdictional findings are supported by substantial evidence. Because the trial court specifically identified Father's unresolved alcohol abuse problem as a risk factor, the juvenile court properly exercised its discretion by requiring Father to participate in programs designed to address that problem.

## IV. The Monitored Visitation Order Was Appropriate

Father contends that a monitored visitation order is inappropriate where, as here, the record contains no indication of a problem with unmonitored visits. We disagree with Father's characterization of the record. The evidence reasonably supported a finding that Father had used his unmonitored visits to encourage Ricardo to write letters that were critical of Mother, thus embroiling Ricardo in his parents' conflict, which fostered his desire to injure himself. Moreover, in light of Father's unresolved drinking problem and prior instances of driving with Ricardo while under the influence of alcohol, it was within the trial court's discretion to require monitored visitation while Father participated in alcohol counseling, programs, and testing. We therefore reject Father's contention of error.

## V. Father Was Subject to Findings Under Section 361 and Was Not Entitled to Immediate Custody Under Section 361.2, Subdivision (a)

Father contends that because he was not a custodial parent, the trial court "should not have made detriment findings as to him under section 361."[7] He argues that "[o]nce a child has been removed from the home of a custodial parent," which in this case would be Mother, "section 361.2 directs the court to determine whether the child has another parent with whom he or she was not residing who wants to assume custody," which in this case would be Father. Citing *In re Zacharia D.* (1993) 6 Cal.4th 435, 453, Father contends that he was entitled to immediate custody under section 361.2, subdivision (a), which states: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not

---

[7]    Section 361, subdivision (c) provides in relevant part:
"A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, in an Indian child custody proceeding, paragraph (6):
"(1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury. The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm. [¶] . . .
"(3) The minor is suffering severe emotional damage, as indicated by extreme anxiety, depression, withdrawal, or untoward aggressive behavior toward himself or herself or others, and there are no reasonable means by which the minor's emotional health may be protected without removing the minor from the physical custody of his or her parent or guardian."

residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."[8]

We are not persuaded by Father's contentions that he qualified as a noncustodial parent who was entitled to immediate custody under section 361.2, subdivision (a), or that the court was not entitled to make findings against him under section 361. According to the family law court's custody order, Ricardo was residing with Father on the first, third, and fifth weekends; and according to the TRO issued on February 11, 2013, Ricardo was to live exclusively with Father on a full-time basis. When the section 300 petition was filed on February 20, 2013, the February 11 TRO, which prohibited Mother from coming within 100 yards of Ricardo, was still in place. The record therefore reasonably suggests that Ricardo was residing with Father, at least on a part-time if not full-time basis, "at the time that the events or conditions arose that brought the child within the provisions of Section 300." (§ 361.2, subd. (a).) Father therefore does not qualify as a parent with whom the child was not residing at the time the relevant events occurred. We thus reject Father's contentions that he was entitled to immediate custody under section 361.2, subdivision (a), or that the court was not entitled to make detriment findings against him under section 361.

---

**8** In *In re Zacharia D.*, *supra*, 6 Cal.4th 435, the California Supreme Court concluded that the child's biological father was *not* entitled to immediate custody of the child under section 361.2, subdivision (a). The court noted that the biological father—who had never obtained presumed father status and never developed a relationship with the child—was incarcerated when the request for immediate custody was made and heard. The court pointed out that in addition to being unprepared to assume immediate custody, the biological father needed extensive services before he would be competent to visit the child.

10

## DISPOSITION

The dispositional and jurisdictional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, J.[*]

We concur:


WILLHITE, Acting P. J.


MANELLA, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.