Filed 8/1/14  In re E.D. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.D. et al., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E059960 |
| Plaintiff and Respondent, | (Super.Ct.No. J250292-94) |
| v. | **OPINION** |
| M.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Adam E. Ebright, Deputy County Counsel, for Plaintiff and Respondent.

1

Appellant M.S. and his wife D. are the legal guardians of E. (currently 13 years old), Child D.[1] (currently nine years old), and E. [2] (currently seven years old) (collectively, the children).  The children had originally been removed from their parents due to severe physical and sexual abuse in their home; they were placed voluntarily in guardianship.  The children remained with the guardians for several years.  The children then came to the attention of San Bernardino County Children and Family Services (CFS) again due to new allegations of physical abuse by D.

CFS filed petitions on behalf of the children under Welfare and Institutions Code[3] section 300 alleging that M.S. knew or should have known about the abuse and that he had failed to protect the children from serious physical harm.  At the contested jurisdictional/dispositional hearing, the juvenile court found the section 300 petition allegations true, ordered placement in foster care, and ordered reunification services to M.S., D., and mother.[4]

On appeal, M.S. challenges the court's jurisdictional findings and argues that there was insufficient evidence that he knew or should have known about the abuse.  M.S. also

---

[1] This child will be referred to as "child D." since M.S.'s wife, D., and child D. share the same initial.

[2] The seven-year-old child will be referred to as "young E." since there are two children with names starting with an "E."

[3] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[4] D. and mother are not parties to this appeal.

challenges the dispositional order and argues that the children should have been placed in his care. We disagree and affirm the judgment.

I

PROCEDURAL AND HISTORICAL FACTS

The children came to the attention of San Bernardino CFS on July 9, 2013, after receiving an immediate response referral from law enforcement alleging physical abuse. The deputy on scene reported that E. had run away from his home because he had been beaten by M.S.'s wife, D. E. reported that D. had "whooped" him with a three-foot length garden hose because he had left the property to run an errand without asking permission.

When the social worker interviewed E., he reported that D. had folded the hose in half and hit him with it six times. E. lifted up his shirt to reveal dark purple and red lines across his back, shoulders, and legs. He reported that D. had beaten young E. with the hose as well. E. stated that he did not feel safe in the home and that D. had threatened to "do a lot worse." As to M.S., E. reported that M.S. also hits E. with a belt; M.S., however, controls himself and does not leave marks.

The social worker also interviewed child D. He confirmed that D. had beaten E. with the hose that afternoon. Child D. reported that he had seen D. beat E. and young E. with the hose several times in the past. Child D. reported that D. used the hose specifically for punishment and did not use it as a garden hose. D. referred to the hose as her "best friend."

Young E. stated that she knew D. had used the hose on E. because she could hear him screaming during the beating and saw him crying afterwards. She also confirmed that D. beat her with the hose and estimated that she had done so approximately ten times in the past. Young E. reported that M.S. sometimes "whoop[ed]" her with a belt resulting in red marks; her pants were always on during the beatings. When young E. was examined the next day, she had bruising along the right side of her abdomen and rib cage. Young E. stated that she is scared to be in the home because E. hurts her and constantly threatens her. She reported that E. once pushed her off the top of her bunk bed while she was sleeping. When D. found out, she punished E. by beating him with a "fat stick," leaving marks up and down his arms.

When the social worker interviewed D., she admitted hitting E. and young E. with the hose, and hitting E. with a stick. She, however, minimized any prior incidents. She claimed that she usually only lightly "bopp[ed]" E. on the knee or put the children in time out.

M.S. claimed that he did not know about the beatings that day because he was sleeping during the incidents. He claimed that he had never seen D. use a hose or any other form of physical discipline on the children. He confirmed that he disciplines the children by hitting them with his hand or a belt on their clothed buttocks.

The social worker prepared section 300 petitions on the children's behalf containing allegations under section 300, subdivision (a), (b), and (g). As to M.S., the petitions alleged failure to protect under section 300, subdivision (b), in that D. had

4

caused physical injury to the children and that M.S. "knew or reasonably should have known that the children would be in danger of sustaining serious physical harm."

At the July 12, 2013, detention hearing, the court found that a prima facie case had been established that the children came under section 300, and ordered detention out of the home. The court notified M.S. that pursuant to section 361.5, subdivision (b) or (e), no reunification services may apply, and ordered weekly supervised visitation.

The social worker prepared a jurisdictional/dispositional report asking that the children remain out of the home, but recommended that the court provide reunification services to M.S.

All three children were interviewed at the Children's Assessment Center regarding the physical abuse. The children had a long history of severe abuse and had previously been removed from their biological parents as a result of abuse in the home. E. reported that his adult sister, A., used to physically torture and sexually abuse all three of them. A. had also previously been removed from the home due to sexual abuse by her father; she was returned to her mother's care.

E. reported that A. would make them get on her with their clothes off and "hump her." Everyone in the home was aware of these acts. He stated that A. would rape the children, and put knives, sticks and other objects up their "butts" which would cause bleeding. A. would laugh at this and would force the children to watch each other as she did it to each of them. E. described a variety of other physical abuse including being burnt with a cigarette lighter, burnt by hot water, and cut with knives, screws and pieces of chain-link fence. E. reported that the sexual abuse occurred about once a month but

5

that A. would commit acts of sodomy and inflict other physical abuse almost daily. Mother reported that after the removal of the younger siblings, she agreed to have them placed with M.S. in order to avoid sending the children to foster care.

E. reported that D. had started beating him abusively around the Fourth of July. He stated that D.'s adult daughter, C.C., knew about the beatings and that C.C. also hit the children with the hose. Young E. reported that C.C. would hold her by the hair to keep her still while D. beat young E. with the hose. E. stated that when the beatings began, he felt like he was back with his older sister, A., again.

Young E. reported that she did not like living with M.S. because she would get beaten with the hose if she did not do her chores correctly. Young E. had been forced to sleep outside, alone in a tent, as punishment when she made D. mad. Young E. reported that M.S. was aware that D. was hitting her with the hose, but did nothing about it. Young E. was also scared of E. because he would torture and hurt her as well.

M.S. and D. reported that the children's behavior had improved since they had been in the custody of M.S. and D. M.S. was aware of the physical and sexual abuse by A. and believed that A. had instructed E. to abuse his younger siblings. M.S. and D. stated that they love the children and are willing to do whatever it takes to get them back.

The social worker noted that there was a concern with placing E. together with his younger siblings and noted that young E. did not want to visit with M.S. However, because of the children's lifelong relationship with M.S., the social worker concluded that "it appears to be worthwhile to further explore offering services to the guardians."

6

On September 9, 2013, the court held the contested jurisdictional and dispositional hearing. M.S. was present for the hearing and the only witness to testify. M.S. testified that he had witnessed D. discipline all three children by swatting them with her hand, but never saw her hit them with any objects. M.S. stated that the children never told him that D. hit them with any objects, but he believed that they were telling the truth about the beatings. On cross-examination, however, M.S. stated that he did not believe that the beatings occurred routinely; he believed that it was only a single incident. When asked about the span of the physical abuse, M.S. stated: "There was no physical abuse by my wife. I was not aware of the physical abuse that was happening. There was no physical abuse, and I can establish that." M.S. testified that, despite the children saying he was aware of D. hitting them with the hose, he had never watched her do it. M.S. speculated that the children were somehow trying to "milk the system" in an effort to get free toys or shoes from the foster care system because, in his care, the children had to earn those types of things on their own.

In closing argument, counsel for CFS noted that there was no direct section 300, subdivision (a), allegation against M.S., but that the (b) allegation was supported by the children's statements and the extent of the injuries discovered on E. and young E.

The juvenile court noted that the children had already had a hard life. M.S. made it worse by rationalizing the physical punishment. The court then found the allegations contained in the section 300 petitions to be true, including the (b)(3) allegation as to M.S., and ordered reunification services.

## II

## DISCUSSION

A.    *The Juvenile Court Properly Sustained the Allegation that M.S. Knew or*

*Should Have Known the Children Were at Risk of Abuse*

M.S. contends that the juvenile court erred in sustaining the allegation that M.S. "knew or should have known the children were at risk for abuse because there is insufficient evidence [M.S.] had any reason to know D. used excessive physical punishment on the children." We disagree.

"'On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.] The term "substantial evidence" means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citations omitted.]' (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) 'In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reasons. [Citation.]' (*In re Ricardo L.*(2003) 109 Cal.App.4th 552, 564.)" (*In re E.B.* (2010) 184 Cal.App.4th 568, 574-575.)

In this case, according to young E., M.S. had firsthand knowledge of the physical abuse by D.; young E. stated that M.S. was aware of the beatings but did nothing about it. In addition, the record contains ample evidence for the court to conclude that M.S. knew or *should have known* that the abuse was occurring in his home. M.S. testified that he

8

had witnessed D. discipline all three of the children by swatting them with her hand. When the children were interviewed by the social worker and the Children's Assessment Center, they were forthcoming and consistent in describing the abuse. Young E. described ongoing abuse by D. She reported that D. beat her with the hose and estimated that she had done so approximately 10 times in the past. Child D. stated that D. uses the hose specifically for punishment and did not use it as a garden hose at all.

Additionally, there was significant physical evidence of the abuse. E.'s body was covered in dark purple and red lines across his back, shoulders, and legs. Moreover, when young E. was examined in her foster placement, she had bruising along the right side of her abdomen and rib cage.

Furthermore, every other member of the household acknowledged that they knew about the physical abuse by D. Although D. minimized any prior abuse, she was forthcoming about using the hose for discipline and even characterized the hose as "my best friend." Young E. stated that she knew D. had used the hose on E. because she heard him screaming during the beating and saw him crying afterwards. Child D. claimed that he had seen D. beat E. and young E. with the hose several times in the past. E. reported that M.S.'s adult daughter, C.C., also knew about the beatings, and in fact, hit the children with the hose as well. Young E. reported that C.C. would hold her by the hair to keep her still while D. beat her with the hose.

Notwithstanding the evidence presented, in support of his argument, M.S. states that young E "alone, of all the parties interviewed, said [M.S.] saw D. hit the children with the hose. She is the youngest and appears to be the least reliable historian. Her

9

statements, when viewed in the context of the entire record, do not provide sufficient evidence by which to find by a preponderance of the evidence that [M.S.] knew or reasonably should have known D. was placing the children at risk of serious physical injury." We reject M.S.'s argument. "'It is axiomatic that an appellate court defers to the trier of fact on such determinations, and has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence. We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses. [Citation.] "Issues of fact and credibility are questions for the trial court." [Citations.] It is not an appellate court's function, in short, to redetermine the facts.' (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199-200 .) Under the substantial evidence rule, we 'must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.' (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.)" (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.)

In addition to the above, M.S. argued that "[t]o the extent the allegations were found true or the children were removed due to [M.S.'s] practice of spanking with a belt[,] this was error because there was no allegation of physical abuse by [M.S.] and spanking with a belt on the buttocks over the clothes does not per se constitute physical abuse." We, however, need not address this issue because, as discussed above, the evidence supports the finding that M.S. knew or should have known about the abuse.

Based on the above, we find that the trial court properly found that the section 300 allegation against M.S. is supported by substantial evidence.

B.   *The Dispositional Order Was Proper*

M.S. contends that the juvenile court erred in removing the children from his care because his "practice of spanking the children with a belt was not a subject of the proceedings, he agreed he would not use any form of physical punishment, and D. agreed to move out of the home so the children could be returned."

Section 361, subdivision (c), provides in relevant part that, "[a] dependent child may not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence of any of the following circumstances: . . . [¶] (1) There is or would be substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardian's physical custody."

M.S. is correct that the standard for removal under section 361 is clear and convincing evidence in the juvenile court. However, on appeal, we review the juvenile court's findings for sufficiency of the evidence. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) Moreover, we must consider the circumstances as they presented themselves at the time of the dispositional hearing. (*In re Jeremy C.* (1980) 109 Cal.App.3d 384, 394.)

In this case, at the time of the contested jurisdictional and disposition hearing, D. was still living in M.S.'s home. M.S. never indicated that he had planned to remove D. from the home or ensure that she did not have unauthorized contact with the children. Instead, M.S. testified that moving out was something D. was "willing to sacrifice and do." Hence, there was very little probative value in speculating that D. would move out

11

of the home in the future; the juvenile court correctly made its decision based on the circumstances at the time of the hearing.

Moreover, there was sufficient evidence, as detailed above, to support the juvenile court's determination that the children were not safe in the custody of M.S. – based on his past history of failing to protect the children from harm.

Therefore, the juvenile court correctly found that there was a substantial risk of serious harm to the children if they remained in the home, and properly removed the children from the physical custody of M.S.

### III

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

12