Filed 4/25/16  In re Nathan R. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re NATHAN R. et al., Persons Coming Under the Juvenile Court Law. | B262775 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DIANA A., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK08161) |

APPEAL from orders of the Superior Court of Los Angeles County, Timothy Saito, Judge.  Reversed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Julia Roberson, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court found Diana A. (mother), who suffered from depression and had used methamphetamines five times, neglected Nathan R., Jonathan R., and Matthew R., ages 8, 7 and 5, respectively, when she attempted to commit suicide by hanging herself in her bedroom while the children and her live-in boyfriend were in another room. The court found mother's emotional issues, recent use of methamphetamines, and suicide attempt physically endangered the children. It declared them dependants, ordered that they be placed with their father, and terminated jurisdiction.

On appeal, mother contends the findings and orders were unsupported by substantial evidence. We agree, because no showing was made that mother's mental health issues, past drug abuse, or suicide attempt posed a substantial risk of serious physical harm to the children. Accordingly, we reverse.

## BACKGROUND

On October 16, 2014, mother, who suffered from depression, attempted to hang herself in her bedroom in a home she shared with Juan C., her live-in boyfriend. Her three children were asleep in another room. She was found by Juan C. and taken to the hospital in critical condition, where she tested positive for methamphetamines. An investigation by the Department of Children and Family Services (DCFS or the department) revealed the children were "physically healthy, developmentally on target, dressed appropriately in clean clothes, properly groomed, and free of marks/bruises indicative of abuse." When not in the care of mother or Juan C., the children were cared for by relatives, including their maternal and paternal grandparents. The children reported mother sometimes closed her bedroom door and cried and did not want to eat, but they did not know what drugs were and had not been told mother had attempted suicide.

The investigation also revealed that mother and Juan would get mad at each other on occasion, but never engaged in domestic abuse or violence. Mother admitted she had thought about suicide once prior to October 2014, but made no prior attempt. She had been prescribed Zoloft but could not afford to fill the prescription. Mother reported she had smoked marijuana in the past and used methamphetamines five times, always at

home when the children were staying over at relatives' homes. The last time was on October 11, 2014, five days before the suicide attempt. The drugs were supplied by Jennifer, a friend, who by the time of the jurisdiction hearing was no longer an acquaintance. Mother stated that each time she used methamphetamines she would feel the effects for up to a week, including when the children were home, and was feeling them on October 16, 2014, when she attempted suicide.

On November 4, 2014, DCFS filed a petition alleging mother's emotional problems, suicide ideation, and drug use posed a substantial risk of serious physical harm to the children. (Welf. & Inst. Code, § 300, subd. (b).)[1]

DCFS provided mother with referrals for individual counseling, drug awareness counseling, parenting classes, and medication follow-up. Her parents moved to her home, and she participated in individual counseling with a therapist, took part in the parenting classes, completed a mental health evaluation, and tested negative for all substances. The children were moved to Michigan to be with their biological father, with mother receiving daily monitored telephone visits.

At the jurisdiction hearing, mother and a DCFS social worker testified consistent with the DCFS reports.

On March 3, 2015, the juvenile court found mother had unresolved "mental and emotional problems" that "endanger[ed] the children's physical health and safety and place[d them] at risk of physical harm, damage and danger," and her "[d]epression, suicidal ideation, and a suicide attempt" rendered her incapable of providing regular care to the children. The court amended the petition's allegation of "current" drug use to state mother was a "recent user of methamphetamines," i.e., had used them prior to the suicide attempt, and found the drug use "render[ed] mother incapable of providing regular care of the children" and "endanger[ed] the children's physical health and safety and place[d them] at risk of physical harm and damage."

---

[1] All statutory references will be to the Welfare and Institutions Code.

3

The juvenile court ordered the children placed with their biological father in Michigan with monitored visitation and ordered mother to participate in parenting classes and mental health counseling and take psychotropic medications as prescribed. The court them terminated jurisdiction.

Mother timely appealed.

## DISCUSSION

Mother contends insufficient evidence supports the finding that circumstances existing at the time of the hearing indicated her children had suffered or likely would suffer serious physical harm or illness. We agree.

A child comes within the jurisdiction of the juvenile court under subdivision (b) of section 300 if he or she "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b)(1).) A "court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm." (§ 300, subd. (a).) The substantial risk of physical harm must result from "the failure or inability of [the child's] parent or guardian to adequately supervise or protect the child," the "failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness . . . ." (§ 300, subd. (b).) "Cases finding a substantial physical danger tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment— typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [11-year-old subject to risk of harm if placed in home allowing access to drugs].) "While evidence of past conduct may be probative of current

4

conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*Ibid.*) Thus past physical harm, "standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.'" (*Ibid.*)

We review jurisdictional and dispositional orders for substantial evidence, viewing the record as a whole in the light most favorable to the juvenile court's order and indulging every inference and resolving all conflicts in favor of the court's decision. (*In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1649.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K*. (2009) 174 Cal.App.4th 1426, 1433.) "In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.) In other words, "[i]t is the trial court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence. [Citations.] Under the substantial evidence rule, we must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*In re Casey D*. (1999) 70 Cal.App.4th 38, 52-53.)

Here, there is no evidence, and DCFS does not contend, that mother's children ever suffered any neglect or injury. The issue is whether evidence supports the juvenile court's finding that the children are at substantial risk of serious future injury. We discern none.

It is undisputed the children were well cared for and had never been left unsupervised, that they were unaware of mother's drug use or suicide attempt, and that

5

they had never witnessed any sort of domestic violence or abuse. No evidence was adduced at trial supporting a finding that as of the date of the jurisdiction hearing, the children were at substantial risk of future serious physical harm based on mother's conduct on October 16, 2014.

The department argues mother's suicide attempt and former drug use illustrate the seriousness of her admittedly ongoing "emotional problems," which present a danger to the children going forward.[2] This is so, the department argues, because if mother attempted suicide again and was successful, the children could be left home unattended. And if the instrument of mother's next suicide attempt was a knife or illegal substance, the children could be exposed to possible physical harm from weapons or drugs if they intervened to stop her. Moreover, if the suicide attempt was accompanied by a fit of rage or despair, mother might throw objects and cause possible injury to the children. Also, mother's ongoing feelings of despair, anger, jealousy, and possessiveness might cause her to hurt herself and the children going forward. In sum, DCFS argues, mother's exhibited pattern of poor judgment in treating her depression with repeated methamphetamine use in the family home, which almost resulted in her death, poses an ongoing risk of harm to the children.

Nothing in the record supports any of these scenarios. There is no evidence, for example, that mother was or would be violent, attempted or might attempt suicide with an instrument dangerous to others, or left the children unattended during her lone attempt. DCFS had the burden of showing specifically how the minors were harmed or were at substantial risk of future serious harm. Harm will not be presumed from the mere fact of a parent's mental illness. (*In re David M*. (2005) 134 Cal.App.4th 822, 830; *In re*

---

[2] The department argues mother's admissions regarding her drug use were somewhat inconsistent, which casts doubt on her statement that she used methamphetamines only five times in the past, which supports the juvenile court's finding that mother's substance abuse problem was ongoing. But the court made no such finding. On the contrary, it struck the allegation that mother's drug problem was "current," finding only that it was "recent."

*Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; *In re David D.* (1994) 28 Cal.App.4th 941, 953.) "[S]peculation about the mother's possible future conduct is not even sufficient to support a finding of dependency much less removal of the physical custody of the child from the parent." (*In re Steve W.* (1990) 217 Cal.App.3d 10, 22.) We conclude no substantial evidence supported the juvenile court's finding that mother's emotional issues and past drug use posed a substantial risk of serious future harm to the children. The court therefore abused its discretion in asserting jurisdiction.

Without proper jurisdiction, the juvenile court had no authority to issue a dispositional order. (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1261; see § 362.4.)

## DISPOSITION

The juvenile court's orders are reversed.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:



ROTHSCHILD, P. J.



JOHNSON, J.