Filed 6/24/16  In re Elizabeth M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re ELIZABETH M., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>Defendant and Appellant. | F072537<br><br>(Super. Ct. No. 517295)<br><br>**OPINION** |

**THE COURT**\*

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Rebekah S. Sass, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Gomes, Acting P.J., Kane, J. and Smith, J.

A.C. (mother) appeals from the jurisdiction and dispositional orders filed by the juvenile court after the Stanislaus County Community Service Agency filed a petition pursuant to Welfare and Institutions Code section 300 on behalf of mother's child, Elizabeth M.[1]  Mother argues there is not substantial evidence in the record to support either order.  We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

The facts leading to the disputed orders are found in the detention report as well as the jurisdiction/disposition report.  These reports are consistent with the logs attached to the jurisdiction/disposition report.  With few exceptions, these facts are not in dispute.  As mother is the appellant in this case, we focus on the facts and allegations as they relate to her.  The facts are not in chronological order, but instead organized by topic.

*Mother's Drug Use and Treatment*

The Agency's involvement with Elizabeth began when it was informed on May 4, 2015,[2] that mother tested positive for methamphetamine and marijuana when Elizabeth was born.  Nearly two weeks later, when mother was interviewed by the Agency's social worker, mother admitted that throughout her pregnancy she regularly smoked methamphetamine and cigarettes, and smoked marijuana occasionally.  Mother admitted to smoking methamphetamine for two years, marijuana for about one year, and cigarettes since she was eleven years old.  On June 8, mother failed to attend a drug assessment screening, claiming she was ill.

Mother attended the drug treatment program on June 11, and tested negative for all drugs.  Mother agreed to attend group meetings at the facility.  However, she failed to attend the first meeting, which occurred the following day.  Mother claimed she could not

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] All dates refer to the year 2015, unless otherwise noted.

find a ride to the program, despite the Agency having provided her with a bus pass. On June 17, when confronted with her missed meetings, mother stated she would not participate. On June 26, mother again tested negative for all drugs.

*Mother's Developmental Disability*

There were concerns about the possibility mother may be developmentally delayed at Elizabeth's birth. At the May 13 interview, mother admitted she had been diagnosed as developmentally delayed at a young age. At the June 2 meeting with the Agency, mother stated she once was a client at the local regional center, but was dropped from the program because she failed to keep her appointments. The regional center confirmed mother's past relationship, and her failure to keep appointments. On June 17, the Agency learned a conservatorship had been set up for mother because of her disability.

*Mother's Failure to Comply*

Mother initially agreed to a family maintenance plan which required her to live with her aunt, and refrain from using drugs. At the June 9 meeting, mother told the social worker she intended to move out of her aunt's home, citing conflicts with mother's cousin. The social worker informed mother the family maintenance plan required mother to live with her aunt for Elizabeth's safety. On June 17, mother stated she wanted to terminate family maintenance.

On June 26, the social worker learned mother was at grandmother's home, and had spent the previous night there. Aunt reported she did not know when, or if, mother would return to aunt's home. That same day, the social worker went to grandmother's home and found Elizabeth and mother. Elizabeth appeared to be clean and healthy. Mother agreed to continue family maintenance, and agreed to return to aunt's home. On June 29, mother again declined family maintenance services, including parenting classes and drug treatment.

*Elizabeth's Health*

At the May 13, meeting, mother reported that Elizabeth was losing weight because she would vomit after eating. Mother also stated she forgot to mention the problem to the pediatrician at a recent visit. On June 17, mother reported she forgot to attend a doctor's appointment for Elizabeth. On June 29, the social worker learned mother had not rescheduled the missed doctor's appointment, and learned mother had missed an appointment for an ultrasound which had been scheduled to diagnose the vomiting problem.

*Miscellaneous*

On June 15, mother was unprepared to attend an appointment at the Department of Motor Vehicles to obtain an identification card. The family was also receiving assistance from a Public Health Nurse. During the various visits by the social worker, Elizabeth always appeared well cared for, and the home in a clean condition.

*The Legal Proceedings*

The Agency filed a juvenile dependency petition on July 2, alleging Elizabeth came within the jurisdiction of the juvenile court pursuant to the provisions of section 300, subdivision (b). Specifically, the petition alleged there was a substantial risk Elizabeth would suffer serious physical harm or illness because of mother's failure or inability to supervise or protect her, and because of mother's developmental disability and substance abuse she could not provide regular care for Elizabeth.

The juvenile court detained Elizabeth, and proceeded to a combined jurisdiction/disposition hearing. The juvenile court concluded it had jurisdiction over Elizabeth applying the preponderance of the evidence standard. Based on the same evidence discussed above, the juvenile court then concluded the proper disposition for Elizabeth was placement outside of the home while providing mother with reunification services.

At the jurisdiction hearing, mother's counsel offered the following as mother's proposed testimony, which all parties accepted. According to mother's counsel, mother would testify that on June 26, she and Elizabeth spent only one night at grandmother's house and always intended to return to aunt's home. Mother had completed her intake at the regional center and was cooperating with the services offered. Mother confirmed she was ill on the day she missed the substance abuse assessment. Mother asserted she missed her substance abuse groups because she was not provided transportation by the Agency. She also would testify that she was transported to the DMV, and obtained her identification card on June 15. Finally, mother asserted she never refused family maintenance services, but instead indicated she did not feel such services were necessary.

*Foster Placement*

Elizabeth was placed in foster care after the detention hearing. The foster mother reported Elizabeth had two rashes, one a diaper rash, the other a rash around the face apparently related to her vomiting. The foster mother also commented that Elizabeth appeared not well cared for, as she found encrusted formula in Elizabeth's ears. The foster mother also took Elizabeth to the pediatrician who diagnosed severe constipation as the cause of the vomiting. An appointment was made for an imaging study to determine the cause of the constipation.

DISCUSSION

Mother argues the evidence was insufficient to support both the jurisdiction order and the disposition order. The juvenile court relied on the same evidence when making both orders. The standard of review in substantial evidence cases is well established.

> " 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact.

[Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]' [Citation.] However, substantial evidence is not synonymous with *any* evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations]." [Citation.] 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' " (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394.)

The juvenile court found that Elizabeth came within the jurisdiction of the juvenile court pursuant to the provisions of section 300, subdivision (b). This provision provides that a child is within the jurisdiction of the juvenile court when "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child … or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subd. (b).) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances at the time of the hearing subject the [child] to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, italics omitted.) "Thus[,] previous acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565.) The Agency must establish the child falls within the jurisdiction of the juvenile court by a preponderance of the evidence. (§ 355, subd. (a).)

If the juvenile court determines the child comes within its jurisdiction, it then proceeds to the question of the proper disposition for that child. The juvenile court has

many options when determining the proper disposition, including placing limitations on the parent's control over the child (§ 361, subd. (a)(1)), or removing the child from the physical custody of the parent (§ 361, subd. (c)).

> "The fundamental right to the care and custody of one's child is protected by constitution and statute. [Citation.] A child may not be taken from a parent's physical custody during juvenile dependency proceedings, except for a temporary detention period, unless clear and convincing evidence supports a ground for removal specified by the Legislature. Removal on any ground not involving parental rejection, abandonment, or institutionalization requires a finding that there are no reasonable means of protecting the child without depriving the parent of custody. [Citations.]
>
> "These basic guidelines establish that out-of-home placement is not a proper means of hedging against the possibility of failed reunification efforts, or of securing parental cooperation with those efforts. It is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent. The law requires that a child remain in parental custody pending the resolution of dependency proceedings, despite the problems that led the court to take jurisdiction over the child, unless the court is clearly convinced that such a disposition would harm the child. The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 525.)

The juvenile court made the required findings to conclude it had jurisdiction over Elizabeth, and that the proper disposition was to remove her from mother's care and custody. Mother argues there was not substantial evidence to support either finding. In making her argument, mother focuses on the aspects of the record that support her argument, while minimizing the portions of the record that support the findings. We, on the other hand, review the entire record.

Based on our review, we conclude there is substantial evidence to support the juvenile court's findings. Four aspects of mother's behavior established Elizabeth was at a substantial risk of serious harm if she were left in mother's custody, thus providing evidence supporting the disputed orders.

7.

First, mother failed to recognize the potentially life threatening consequences of Elizabeth's vomiting problem. Mother observed Elizabeth repeatedly vomited after eating, but failed to recognize that left untreated, such a problem could have serious, if not deadly, consequences. We recognize the record suggests that after Elizabeth was in the custody of the foster mother, it was determined the issue could be addressed with over-the-counter medication. Nonetheless, the fact remains mother did not realize the problem needed to be addressed, even failing to advise the pediatrician of the problem during a visit.

Second, mother demonstrated an inability to make or keep appointments once others informed her the vomiting issue needed to be addressed by medical personnel. As stated above, mother failed to mention the problem to Elizabeth's pediatrician during a routine appointment. Mother then failed to attend a follow-up appointment to address the issue, and failed to take Elizabeth to have medical imaging done to determine the cause of the problem. Mother's inaction shows an inability or unwillingness to behave in a responsible manner that would ensure Elizabeth's health, thus demonstrating Elizabeth was at risk of serious harm if left in mother's care.

We also note mother repeatedly demonstrated her inability or unwillingness to keep appointments unrelated to Elizabeth's health. Mother failed to attend substance abuse counseling, missed appointments for drug treatment, and was late for other appointments arranged by her social worker. While these failures did not place Elizabeth at risk of serious harm, they do demonstrate mother's failure to keep her appointments extended beyond Elizabeth's health care, suggesting mother had a serious issue with responsible behavior. This issue could place Elizabeth at serious risk of substantial harm.

Third, mother's repeated refusal to obtain treatment for her drug abuse also supports the juvenile court's findings. Mother admitted that she had abused methamphetamine on an almost daily basis for the past two years, including during her pregnancy. She initially agreed to obtain treatment for this drug abuse, but she repeatedly

8.

failed to attend the substance abuse screening and treatment sessions, and at one point refused to attend either. Mother argues this factor is insignificant because her random drug tests established she had not been taking illegal drugs since the Agency became involved in the matter. However, mother's argument ignores the fact that unless the cause of her addiction is addressed, she is at great risk for relapse. If mother did relapse, Elizabeth would be at substantial risk of suffering serious harm if left in mother's care.

Finally, we note mother's failure to follow through with her commitments to the Agency. Mother initially agreed not only to substance abuse treatment, but also to family maintenance including parenting classes. Mother failed in most instances to participate, and at one point indicated she did not feel she needed any assistance. This attitude demonstrates mother's failure or inability to comprehend the limits of her parenting skills, and an unwillingness to accept the assistance she needs to become a good parent. Once again, this attitude confirms that if Elizabeth were left in mother's care, she would be at a substantial risk of serious physical harm.

DISPOSITION

Substantial evidence established that Elizabeth was within the jurisdiction of the juvenile court, and that if she were left in mother's care, there was a substantial risk of harm to her. Accordingly, we affirm the order after the jurisdiction hearing and the order after the disposition hearing.

9.